UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAM D. GOPAL | : CIVIL ACTION NO: |
|     PLAINTIFF, | |
| V. | : |
| | |
| UNIVERSITY OF CONNECTICUT, | |
| SUSAN HERBST, CRAIG KENNEDY, | |
| JOHN ELLIOT, BRUCE GELSTON | : |
| AND STEPHANIE REITZ, | |
|     DEFENDANTS | : NOVEMBER 14, 2019 |

## COMPLAINT

### I. NATURE OF ACTION

1. This is an action for racial discrimination and retaliation in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e ("Title VII"), the Civil Rights Act of 1991, and denial of due process and equal protection pursuant 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

### II. JURISDICTION AND VENUE

2. The Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§1331, 1343, and 1367.

3. Venue is proper within this judicial district pursuant to 28 U.S.C. §1391 because all of the events or omissions giving rise to the claims occurred in the State of Connecticut and this District.

## III.        PARTIES

4. The Plaintiff, RAM D. GOPAL ("Gopal" or "plaintiff"), at all times mentioned herein, was an Asian-American male, Operations Information Management GE Endowed Professor and Department Head at the University of Connecticut, School of Business, ("OPIM") and was a resident of the State of Connecticut.

5. The Defendant, UNIVERSITY OF CONNECTICUT ("UCONN"), at all times mentioned herein, was a state agency of public higher educational established pursuant to Connecticut General Statutes § 10a-1.

6. The Defendant, SUSAN B. HERBST ("Herbst"), at all times mentioned herein, was the president of UCONN and a resident of the State of Connecticut.

7. The Defendant, CRAIG KENNEDY ("Kennedy"), at all times mentioned herein, was the provost at UCONN and a resident of the State of Connecticut.

8. The Defendant, JOHN ELLIOT ("Elliot"), at all times mentioned herein, was the dean of the School of Business at UCONN and a resident of the State of Connecticut.

9. The Defendant BRUCE GELSTON, ("Gelston"), at all times mentioned herein, was an investigator and Associate Compliance Officer at the Office of University Compliance ("OUC") at UCONN and a resident of the State of Connecticut.

10. The Defendant STEPHANI REITZ, ("Reitz"), at all times mentioned herein, was the Spokeswoman at UCONN and a resident of the State of Connecticut.

11. Defendants' principal place of business and primary campus is located in Storrs, Connecticut.

**IV.     FACTS APPLICABLE TO ALL CAUSE OF ACTION**

12. This case involves denial of due process, systemic discrimination and unequal treatment based upon race.

13. UCONN employs more than fifty people.

14. Plaintiff was employed by UCONN from September 1, 1993 and worked at UCONN continually until his termination on August 29, 2018.

15. Plaintiff' was a conscientious, hard-working and successful employee for his entire time at UCONN.

16. Plaintiff received exemplary performance evaluations during his entire tenure at UCONN.

17. On or about December 15, 2017, Herbst, Kennedy and Elliot without any legitimate basis, initiated an expansive investigation against plaintiff.

18. This investigation was based on a specious anonymous complaint about travel policy violations at OPIM.

19. This anonymous report did not identify the plaintiff.

20. The source format and date received of the complaint was not identified.

21. This anonymous complaint did not establish any legitimate cause to investigate plaintiff.

22. Despite this lack of cause, UCONN, Herbst, Kennedy and Elliot initiated an expansive and intrusive investigation against plaintiff.

23. Herbst, Kennedy and Elliot, without any legitimate basis or allegation ordered OUC to investigate plaintiff.

24. Thereafter, OUC assigned Gelston to conduct the investigation.

25. Gelston, at the behest of Herbst, Kennedy and Elliot, conducted a racially motivated, overbroad, malicious and intrusive investigation of plaintiff.

26. The anonymous complaint did not identify plaintiff but referred to a "department head" at OPIM, a position also held by other white professors at UCONN.

27. Despite this, Defendants determined that the "department head" referred to in the anonymous complaint was plaintiff.

28. Gelston, at the behest of the UCONN, Herbst, Kennedy and Elliot, conducted a biased investigation of unspecified and anonymous charges, and purposely excluded exculpatory evidence and witnesses.

29. Gelston's investigation went beyond the scope of his authority.

30. On or about May 22, 2018, Gelston submitted to Herbst, Kennedy and Elliot his "Final Report", which falsely and maliciously stated that plaintiff violated UCONN's travel policy.

31. Defendants falsely and maliciously found that plaintiff improperly approved travel vouchers.

32. Defendants' investigation falsely inferred that plaintiff committed thievery at UCONN.

33. Defendants ignored exculpatory evidence that plaintiff and others provided to the them.

34. Travel and overtime approval procedures that were enforced against plaintiff were ignored as to other non-minority employees.

35. Defendants were aware that their School of Business had inept procedures that were not uniformly enforced.

36. Other non-minority employees had similar supposed travel procedure violations and were not investigated or disciplined.

37. Material witnesses that would have countered the anonymous allegation were not interviewed by defendant.

38. These witnesses included James Marsden("Marsden"), a fellow OPIM professor and former Department Head; Rachel Greene, School of Business Fiscal Manager; Cyndi Soucy, ("Soucy"), School of Business-Director of Administration; Glenn Harzewski, Travel Services Travel Manager, and numerous other faculty members and staff.

39. Kennedy and Elliot falsely stated that no one approved the travel requests that were the basis of plaintiff's violation of UCONN's travel policy and later termination.

40. Defendants ignored the fact that plaintiff followed all of UCONN Travel Office and payroll rules the same way as other professors and employees.

41. On July 26, 2018, Elliot, who is Caucasian, notified plaintiff that he was recommending termination based upon the false findings by Gelston that plaintiff violated the UCONN's "Policy".

42. On August 29, 2018, plaintiff was subjected to an oppressive and manipulative meeting with defendants in which he was told that he would be fired if he did not resign.

43. At this meeting, plaintiff was not provided an opportunity to be heard regarding the decision to fire him.

44. Plaintiff was eligible for his full pension on September 1, 2018.

45. Defendants demanded his resignation two days before he would be eligible for a full pension pursuant to the Defendants' personnel rules and state law.

46. On the day he was terminated, plaintiff pleaded with defendants to let him continue in his position for two more days so that he could receive his full pension that accrued at that time.

47. Defendants maliciously denied plaintiff's request to stay employed long enough to obtain this pension benefit, telling him he would be fired, when they knew, but did not tell him, that they would characterize his termination as, "not in good standing".

48. Thereafter, plaintiff became aware that his forced resignation, was characterized publicly as, "not in good standing".

49. There is no distinction between being fired and resignation, "not in good standing".

50. Plaintiff was subjected to disparate treatment in the manner in which the investigation was initiated, conducted and finalized, and by the termination of his employment.

51. Plaintiff was treated differently than other employees based upon his race Asian-American, color, national origin, and ancestry.

52. Other similarly situated Caucasian individuals employed by the Defendants were treated differently than plaintiff:

a. Marsden, who is Caucasian, is employed by Defendant as a UCONN Board of Trustees Distinguished Professor and former department head.

b. Marsden, who was not investigated or disciplined, used the same travel and wage approvals, including wage approvals for the same subordinates as plaintiff.

c. Marsden, who was not investigated or disciplined, used the same process for overtime approvals and travel, and in accordance with the guidelines established by UCONN, Elliot and Director of Administration Cyndi Soucy in conjunction with Travel Services.

d. Defendants have not initiated investigation, or any discipline, against Elliot, Marsden, Soucy, Greene or Harzewski-Burl, all Caucasian, who approved or used travel and compensation that plaintiff was disciplined for abusing.

e. Defendants continue to employ James "Jim" Calhoun, ("Calhoun") who is Caucasian, was Head Coach of the Defendant's Men's Basketball Program and found to have engaged in conduct in violation of NCAA rules and regulations following an investigation by the NCAA and UCONN.

f. Defendants have not initiated termination proceedings or forced Calhoun to resign "not in good standing", and in fact continue to pay him, as "Special Assistant to the Director of Athletics" with a total payment of $401,592.94 for fiscal year 2018.

g. These Caucasian employees were treated differently than Plaintiff.

53. Defendants violated the plaintiff's property rights in the following ways:

   a. Plaintiff was a member of the University of Connecticut Chapter of the American Association of University Professors ("AAUP").

   b. On or about July 1, 2017, UCONN and AAUP renewed a collective bargaining agreement set to expire on June 30, 2021, ("CBA").

   c. CBA Article 12.1 states: "…personnel file shall mean any file that may be used in evaluating the performance or conduct of any member of the bargaining unit."

   d. CBA Article 12.4 states: "No anonymous material shall be included in a personnel file".

   e. Defendants violated CBA article 12.4 by placing "anonymous material" in plaintiff's personnel file.

   f. CBA Article 27, *Discipline for Tenured Faculty* states, inter alia: The parties agree that, except for serious misconduct, dismissal should occur only as the final step in a progressive disciplinary system..

   g. Defendants' racially biased and sham investigation and discipline violated CBA Article 27.

54. Defendants actions became the catalyst and basis for the following discriminatory and adverse employment actions:

   a. Plaintiff was subjected to a hostile work environment from March 2018 to August 29, 2018, the time he left UCONN.
   b. Plaintiff was threatened with criminal prosecution if he did not resign.
   c. Plaintiff was denied the opportunity of proper union representation during a rushed termination process.

    d.  Plaintiff was forced to resign on August 29, 2018, two days before he would have received a full pension for 25 years of employment.

    e.  Plaintiff's resignation was, without any legitimate basis, characterized as in "not in good standing."

    f. Non-payment for extra class teaching totaling approximately $15,000.

    g. Lost wages, health and pension time and benefits.

    h. Emotional distress damages.

55. Defendants did not allow plaintiff time to investigate the charges brought against him.

56. Plaintiff was subjected to harassment, and false administrative charges by defendants, who, jointly and severally, maintained them to harm plaintiff's employment and career.

57. Plaintiff was treated differently than other similarly situated individuals and retaliated against by work place harassment, suspension and constructive termination.

58. UCONN has a pattern and practice of treating minority individuals of color differently than their non-black cohorts.

59. Defendants Herbst, Kennedy, Elliot and Reitz published the following false and defamatory statements:

    a.  On September 11, 2018, to the *Hartford Courant*:

> UConn expects all of its employees to comply with university and state policies. The audit found that the department head violated existing UConn policies; this misconduct was not due to a lack of applicable polices.

    b.  On September 11, 2018, to *Fox61 News:*

> The audit found that the department head violated existing UConn policies; this misconduct was not due to a lack of

>> applicable polices…His resignation is listed in university files as reflecting that he left 'not in good standing'…

c. On September 20, 2018, to the Journal Inquirer:

>> The university's investigation also found that Gopal violated UConn's policy…UConn expects all of its employees to comply with university and state polices, Reitz said. The audit found that the department head violated existing UConn policies…This misconduct was not due to a lack of applicable policies.

60. The Defendant initiated media coverage of confidential information and false allegations and discipline in order to damage plaintiff's reputation and to further discriminate against him.

61. The negative media coverage resulted in plaintiff's inability to readily obtain comparable employment in his field.

62. Defendants published to the media the confidential, false and deceitful internal investigation report.

63. The aforementioned reports and publications falsely and maliciously inferred that plaintiff was a deceptive dishonest employee, a thief and criminal.

64. Other non-minority employees with similar allegations were not forced out of their employment with their tenure negatively described.

65. The defendants, during all times mentioned in this action, acted under color of law of the Constitution and Statutes of the United States and State of Connecticut, the laws, charter, ordinances, policies, rules, regulations, customs and usages of the State of Connecticut.

66. The injuries to the plaintiff were the direct and proximate cause of the intentional actions of the defendants, and s a consequence of the defendants actions the plaintiff suffered significant economic harm, humiliation, pain,

embarrassment, anxiety, stress, emotional mental upset, loss of sleep, lost revenue, continued professional harm and attorney's fees.

### V. COUNT ONE- RACIAL DISCRIMINATION (TITLE VII)

67. Plaintiff realleges all paragraphs as set forth fully herein.

68. At all times relevant to this Complaint, UCONN was an employer within the meaning of Title VII § 2000e-2.

69. 42 U.S.C. § 2000e-2(a) (Title VII) prohibits employers from discriminating "against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

70. Plaintiff is Asian-American, a member of a protected class; was qualified for the position he held; was subject to an adverse employment action; and the adverse action occurred under circumstances giving rise to an inference of discrimination.

71. Plaintiff was part of a "protected class", a distinct group of individuals, Asian-American, which UCONN categorically treated differently.

72. UCONN discriminated against plaintiff based upon his race and color.

73. Defendants were motivated in their actions by a racially discriminatory bias.

74. Plaintiff was subjected to disparate treatment by UCONN.

75. UCONN has an employment practice of only investigating minority faculty employees for misconduct and discipline and ignoring allegations of misconduct against white faculty employees.

76. UCONN's employment practice of only investigating minority employees has resulted in a disproportionately adverse effect on this protected class of employees.

77. UCONN had a less discriminatory alternative to the investigation and discipline and then termination of protected class employees, including the plaintiff.

78. UCONN poses a facially legitimate reason for its employment decisions but it is a pretext for discrimination.

79. Defendant and its subordinates, conspired to build a pretextual case to terminate plaintiff's employment and academic standing by manufacturing false and damaging allegations, filing false and damaging reports, creating a hostile and discriminatorily antagonistic work environment in order to force plaintiff to leave his work position.

80. UCONN actions and termination of plaintiff violated Title VII.

81. Plaintiff received a "Release of Jurisdiction" letter for her complaint against UCONN from the Connecticut Commission on Human Rights and Opportunities ("CHRO"), Docket Number 1940301 on October 2, 2019. (Attached as Exhibit 1).

82. Plaintiff received a "Right to Sue" letter from the United States Equal Employment Opportunity Commission ("EEOC"), Docket Number 16A-2019-00753 on November 4, 2019. (Attached as Exhibit 2).

83. As a direct and proximate result of defendant UCONN's hostile, discriminatory and retaliatory treatment of him, plaintiff has suffered, and

continues to suffer, adverse job consequences, lost wages, lost academic advancement, lost professional standing, economic damages, pain, mental anguish, loss of enjoyment of life and damage to his reputation and career.

84. Plaintiff seeks injunctive relief enjoining UCONN from engaging in such unlawful employment practices, and an order that UCONN take affirmative action including reinstatement or hiring of employees, including plaintiff, with back pay and such other equitable relief as the court deems appropriate.

VI. **COUNT TWO – FOURTEENTH AMENDMENT DUE PROCESS**

85. Plaintiff realleges all paragraphs as set forth fully herein.

86. At all times relevant to this Complaint, plaintiff was a tenured endowed professor at UCONN.

87. Plaintiff had a property interest in his continued employment.

*88.* CBA Article 27 A- *Discipline for Tenured and/or Tenured-Track Faculty* states that dismissal for tenured faculty shall be only for just cause.

89. CBA Article 27 B states that union members are entitled to a hearing before dismissal.

90. Plaintiff was denied a meaningful notice and opportunity to be heard, a hearing, before he was terminated from his position.

91. CBA Article 32- *Due Process in University Personnel Matters* states:

> Due process requires that the University protect members from discrimination, prejudice, and distortion in their records pertaining to evaluation for promotion, tenure and any other University personnel matter.

92. Defendants denied plaintiff the protection set forth in Article 32.

93. Defendants did not provide plaintiff adequate "notice or opportunity to be heard" before terminating him.

94. Defendants knew that their termination of plaintiff, later characterized by them as "not in good standing", would deny plaintiff protection pursuant to the Fourteenth Amendment Due Process Clause.

95. Herbst, Kennedy, Elliot and Reitz made false stigmatizing statements about plaintiff to the public.

96. Herbst, Kennedy, Elliot and Reitz's stigmatizing statements called into question the plaintiff's good name, reputation, honor and integrity.

97. Herbst, Kennedy, Elliot and Reitz stigmatizing statements were made concurrently and in close temporal relationship to plaintiff's dismissal from his government employment.

98. Plaintiff's rights under the Fourteenth Amendment Due Process Claus were violated pursuant to the *stigma-plus* theory.

99. Defendants had the legal duty to establish, enforce, direct, supervise and establish and control policies, customs, practices, usages, and procedures to be used by State officials.

100. Defendants conspired through commission and omission by these acts against plaintiff in retaliation for his assertion of rights guaranteed under the aforementioned statutes, policies, laws and the United States Constitution.

101. Plaintiff seeks injunctive relief enjoining UCONN from engaging in such unlawful employment practices, in violation of the Fourteenth Amendment Due Process clause of the United States Constitution and an order that

        UCONN take affirmative action including reinstatement or hiring of employees, including plaintiff, with back pay and such other equitable relief as the court deems appropriate.

102. Plaintiff seeks a declaratory judgment that the Defendants are in violation of the Fourteenth Amendment Due Process clause of the United States Constitution.

## VII. COUNT THREE – FOURTEENTH AMENDMENT EQUAL PROTECTION

103. Plaintiff realleges all paragraphs as set forth fully herein.

104. The Equal Protection Clause of the Fourteenth Amendment commands that no government, "deprive to any person within its jurisdiction the equal protection of the laws" and requires that the government treat all similarly situated people alike.

105. The defendants, by their conduct violated the Equal Protection rights guaranteed to Plaintiff by the Fourteenth Amendment to the United States Constitution.

106. Plaintiff was part of a "protected class", a distinct group of individuals, Asian-American, which UCONN categorically treated differently.

107. Plaintiff was subjected to selective enforcement of discipline in that he was (1) treated differently from other similarly situated individuals, as set forth above, and (2) that such differential treatment was based on impermissible consideration of his race and intended to inhibit his exercise of his rights and inflicted with malice, bad faith and intent to injure.

108. Defendants engaged in a policy of only investigating minority faculty employees for misconduct, while discounting and not investigating similar allegations and/or awareness of misconduct by white faculty employees.

109. Defendants, by their conduct, violated the plaintiff's Equal Protection rights guaranteed to the plaintiff by the Fourteenth Amendment to the United States Constitution.

110. Defendants orchestrated a joint effort to force plaintiff from his government employment and prevent him from receiving the equal protection of the laws.

111. Plaintiff seeks injunctive relief enjoining UCONN from engaging in such unlawful employment practices, in violation of the Fourteenth Amendment Equal Protection clause of the United States Constitution, and an order that UCONN take affirmative action including reinstatement or hiring of employees, including plaintiff, with back pay and such other equitable relief as the court deems appropriate.

112. Plaintiff seeks a declaratory judgment that the Defendants are in violation of the Fourteenth Amendment Equal Protection clause of the United States Constitution.

### VII.   ACTUAL DAMAGES

113. Plaintiff pleads for pre and post judgment interest at the maximum allowable rate. Plaintiff is entitled to actual damages, back pay, front pay, out of pocket expenses, loss of benefits, consequential damages, damage to his reputation past and future, lost and future wages, lost and future wage-earning capacity.

**WHEREFORE**, THE PLAINTIFF CLAIMS:

1. Compensatory money damages from each defendant;

2. A declaratory judgment that the Defendants' acts, policies and practices herein described have violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution as guaranteed pursuant to 42 U.S.C. § 1983;

3. Injunctive relief prohibiting the Defendant from continuing their illegitimate, discriminatory and retaliatory practices and reinstating plaintiff with all back pay and benefits, including credit towards his pension;

4. Punitive damages from each defendant;

5. Any and all nominal damages from defendant;

6. Attorney's fees pursuant to Title VII and 42 U.S.C. §§ 1988.

7. All costs associated with the bringing of his lawsuit;

8. Such other relief as in equity may pertain.

## **CLAIM FOR A JURY TRIAL**

The plaintiff requests a trial by jury for all issues in this case.

                PLAINTIFF,
                RAM D. GOPAL

      BY:   /s/ *James S. Brewer* (ct 07019)
                James S. Brewer
                67 Russ Street
                Hartford, CT 06106
                860-217-0652
                jbreweratty@gmail.com

# EXHBIT 1

## STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Ram D. Gopal
**COMPLAINANT**                                          CHRO No. 1940301

vs.                                                     EEOC No. 16A-2019-00753

University of Connecticut
**RESPONDENT**

### RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

DATE: October 2, 2019                    _____
                                          Tanya A. Hughes, Executive Director

Service:
Complainant's counsel:  jbreweratty@gmail.com
Respondent's counsel:   nancy.brouillet@ct.gov

EEOC Form 161 (11/16)          **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Ram D. Gopal<br>17 Red Rock Lane<br>South Windsor, CT 06074 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2019-00753 | Amon L. Kinsey, Jr.,<br>Supervisory Investigator | (617) 565-3189 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other *(briefly state)*   Charging Party is pursuing claims in another form.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Feng K. An,
Area Office Director

November 4, 2019
*(Date Mailed)*

Enclosures(s)

cc:
CONN., UCONN
352 Mansfield Road
Quinebaug, CT 06262

James S. Brewer, Esq.
67 Russ Street

Hartford, CT 06106