## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAM D. GOPAL | : | CIVIL NO. 3:19-cv-01810-VAB |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT, | : | |
| SUSAN HERBST, CRAIG KENNEDY, | : | |
| JOHN ELLIOT, BRUCE GELSTON, | : | |
| AND STEPHANIE REITZ, | : | |
| *Defendants* | : | FEBRUARY 7, 2020 |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

### TABLE OF CONTENTS

I.    OVERVIEW ........................................................................................................1

II.   RELEVANT FACTS AND PLAINTIFF'S ALLEGATIONS .......................................... 3

III.  STANDARD FOR A MOTION TO DISMISS .................................................. 8

IV.   ARGUMENT ................................................................................................. 9

   A.   Since The Individual Defendants Are Not Plaintiff's Employer,
        His Title VII Claims Against Them Should be Dismissed (Count One).............. 9

   B.   Both The Eleventh Amendment And Sovereign Immunity Bar
        The Claims Against The Defendants in Their Official Capacities
        (Counts Two and Three) ........................................................................10

        1.   Claims Against The State Are Also Barred By Sovereign
             Immunity ...................................................................................13

   C.   Plaintiff Does Not Allege A Sufficient Title VII Claim Against UConn
        (Count One) ........................................................................................14

        1.   Hostile Work Environment ........................................................14

        2.   Plaintiff Does Not Sufficiently Allege An Adverse Action .......16

        3.   Plaintiff May Not Assert A Title VII Pattern and Practice Claim ...........17

**D.**     **Plaintiff's Procedural Due Process Claim Must Be Dismissed (Count Two)** .....18

     **1.**     **Plaintiff Failed To Use The Process Afforded Him** ................................19

     **2.**     **Plaintiff Has Not Stated A Liberty-Interest Due Process Claim** ............22

**E.**     **Plaintiff Has Not Stated an Equal Protection Claim (Count Three)** .................24

     **1.**     **Equal Protection Claims Are Very Different From
Title VII Claims** .......................................................................................29

     **2.**     **Plaintiff May Not Assert A Pattern or Practice
For An Equal Protection Claim** ................................................................31

**F.**     **The Individual Defendants Are Shielded By Qualified
Immunity From Claims Brought Pursuant To 42 U.S.C. §1983
(Counts Two and Three)** .......................................................................................31

     **1.**     **Existing Law** ..........................................................................................33

          **a.**     **The Second Circuit Has Recognized
The Lack of Clearly Established Law** ............................................33

     **2.**     **§1983 Claims Must Be Evaluated For Each
Defendant's Involvement** ........................................................................34

**VI.**     **CONCLUSION** .........................................................................................................38

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAM D. GOPAL | : | CIVIL NO. 3:19-cv-01810-VAB |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT, | : | |
| SUSAN HERBST, CRAIG KENNEDY, | : | |
| JOHN ELLIOT, BRUCE GELSTON, | : | |
| AND STEPHANIE REITZ, | : | |
| *Defendants* | : | FEBRUARY 7, 2020 |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

The Defendants have moved to dismiss the Plaintiff's Complaint pursuant to Federal Rules

of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).

## I.   OVERVIEW

The Plaintiff was an Asian-American male, Operations Information Management GE

Endowed Professor and Department Head at the University of Connecticut. *Compl.*, ¶4. The

Defendant, University of Connecticut ("UConn") is a state agency of public higher educational

established pursuant to Connecticut General Statutes §10a-1. *Compl.*, ¶5. Defendant Susan Herbst

("Herbst"), was the UConn President. *Compl.*, ¶6. Defendant, Craig Kennedy ("Kennedy") was the

UConn Provost. *Compl.*, ¶7. Defendant, John Elliot ("Elliot"), was the Dean of UConn's School of

Business. *Compl.*, ¶8. Defendant Bruce Gelston, ("Gelston") is an investigator and Associate

Compliance Officer at UConn's Office of University Compliance ("OUC"). *Compl.*, ¶9. Defendant

Stephanie Reitz, ("Reitz"), is the UConn Spokeswoman. *Compl.*, ¶10.

Plaintiff's Complaint [Doc. # 1] has three Counts brought against the Defendants

collectively: (1) Title VII racial discrimination, Count One; (2) Fourteenth Amendment Due Process,

Count; and (3) Fourteenth Amendment Equal Protection. Based on those counts, Plaintiff seeks *inter*

*alia*: compensatory damages from each Defendant, a declaratory judgment; prospective injunctive

1

relief prohibiting the Defendants including reinstating Plaintiff with all back pay and benefits, including credit towards his pension and punitive damages from each Defendant.

The Eleventh Amendment and sovereign immunity bars Plaintiff's claims and alleged damages against the Defendants in their official capacities and UConn, the claims against the individual capacity Defendants are barred by qualified immunity, absolute immunity, and sovereign immunity.  Moreover, Title VII claims cannot be brought against individual Defendants.  Further, Due Process and Equal Protection claims cannot be brought against a state agency or the Defendants in their official capacities.

Plaintiff's conclusory allegations fail to state a claim for a violation of Title VII since based on this complaint, the alleged comparators are not similarly situated.  He alleges he was treated differently than other similarly situated individuals, but does not allege their job titles or whether they were alleged to have committed the same misconduct, including violation of the Harassment Policy's prohibition on amorous relationships between supervisors and employees whom they supervise as he was.  Likewise, his claim of selective enforcement in violation of the Equal Protection clause, Plaintiff's allegations that he was treated differently from his alleged comparators based on impermissible consideration of his race also fails.

Moreover, he has not stated a claim pursuant to Sec. 1983 for a Due Process violation when he resigned rather than pursue the process available to him through the collective bargaining agreement, or a claim for violation of the Equal Protection clause.

The individual Defendants are shielded by qualified immunity from the claims for Sec. 1983 violations based on the existing law and objective reasonableness of their conduct.

2

## II.    <u>RELEVANT FACTS AND PLAINTIFF'S ALLEGATIONS.</u>[1]

On **December 14, 2017** an email was sent from UConnstaff@gmail.com to President

Herbst, copying  State Representative Melissa Ziobron, with the subject line, "#me too and state

travel fund issues."  That email said,

> With the recent widespread of #MeToo cases, UCONN should look into the
> appropriateness of its business school OPIM department head traveling together with
> secretary to academic conferences.  Is there any wrongdoing and is the travel fund used
> properly?  Apologize for remaining anonymous.  I need my job.

(Ex. 1).  The anonymous complaint did not identify Plaintiff by name, but referred to the

Department Head at OPIM.  *Compl.*, ¶26. At that time, Plaintiff was the Department Head for the

School of Business' Department of Operations and Information Management ("OPIM") in

addition to holding the positions of tenured Professor and the GE Endowed Chair Professor.

*Compl.*, ¶4. As a result of that email, on December 15, 2017 UConn began investigating these

allegations.  *Compl.*, ¶¶17, 18, 19.

The Plaintiff was aware of the allegations against him as early as **March 2, 2018,** when he

was notified of the Office of Institutional Equity investigation (Ex. 2 at page 2, Filed Under Seal),

*more than five months before* his resignation. Attorney Gelston of UConn's Office of University

Compliance ("OUC") was assigned to investigate the Plaintiff's policy violations by Plaintiff.  *Compl.*,

¶24.

On **April 6, 2018** Report from Sarah Chipman, Office of Institutional Equity, issued the

report regarding her investigation of Plaintiff's conduct (Ex. 2, Filed Under Seal).

---

[1]    In ruling on a 12(b)(6) motion, the Court may consider the complaint, any exhibits attached to the
complaint, and any documents explicitly or implicitly incorporated into the complaint by reference. *Chambers
v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "Matters subject to judicial notice --such as decisions
[in] related proceedings -- are properly considered on a motion to dismiss and do not require the court to
consider the motion as one for summary judgment.*" Jackson v. New York State*, 523 F. App'x 67, 68 (2d Cir.
2013).  Thus, the Defendants have appended documents referenced in the Complaint, and the underlying
CHRO/EEOC complaints and documents.  Those exhibits have been previously provided to the Plaintiff
through his counsel representing him in the CHRO/EEOC complaints.

Plaintiff participated in interviews as part of the Office of Institutional Equity's and Office of University Compliance's investigations, and reviewed and submitted a substantive written response (in excess of fifty pages, with exhibits) to a draft of the Office of University Compliance report, and provided a written submission to Provost Kennedy. (Exs. 2, 3).

After investigations by the Office of Institutional Equity, the Office of University Compliance and Audit, and the Management Advisory Services In Business Travel, the Plaintiff was found to have violated the Harassment Policy's prohibition on amorous relationships between supervisors and employees whom they supervise (Melissa Burk) and violation of University policies related to travel. *Compl.*, ¶30. (Ex. 3, **April 30, 2018** Audit and Management Advisory Services in Business Travel Report, appended to **May 22, 2018** Report of Office of University Compliance).

These investigations concluded that Plaintiff improperly authorized compensatory time payments for Ms. Burk and that he engaged in conduct that violated University policies including the Travel Policy, the Code of Conduct, and the University Guide to the State Code of Ethics. (Exs. 2, 3). The investigations also concluded that there was not sufficient evidence to indicate that the conduct of a sexual nature between the Plaintiff and Ms. Burk was not consensual. These investigations made no determination regarding whether any criminal act of theft had occurred.[2]

In a **May 29, 2018** letter, Dean of the School of Business Elliott advised the Plaintiff that based on his violation of University policies including, but not limited to, the Harassment Policy (therein referred to as the "Romantic Relationship Policy") and the Travel Policy, the procedure for disciplinary action up to and including termination was being initiated. (Ex. 4).

---

[2]   The Office of University Compliance also investigated Ms. Burk's conduct with regard to the same travel and compensatory time for which the Plaintiff was investigated. (Ex. 3).

After those investigatory reports were received, on **June 1, 2018** in accordance with Article 27B of the collective bargaining agreement, Dean Elliott held a hearing in which Plaintiff was represented by David Amdur, Associate Director UConn AAUP regarding the Plaintiff's misconduct. (Ex. 5, page 1).

On **July 26, 2018**, Dean Elliott wrote to the Plaintiff, describing his conclusions from the **June 1, 2018** hearing recommending termination based upon the findings that Plaintiff had violated UConn's policies to Provost Kennedy, copying David Amdur, Associate Director UConn AAUP, and Provost Kennedy. *Compl.*, ¶41. (Ex. 5).

Plaintiff then had a hearing scheduled before Provost Kennedy on **August 16, 2018**.

On **August 16, 2018**, Plaintiff filed an appeal of Dean Elliot's recommendation to Provost Kennedy. (Ex. 6 at page 3). In his appeal, Plaintiff addressed his inappropriate communications with his subordinate, Ms. Burk, saying:

> I apologize profusely for the instant messages that I exchanged with Melissa. These dozen or so messages over the course of about four years were moments of weakness and stress I was facing. Beyond these, our normal business communications (many hundreds of emails and messages) and behavior in the office was professional and respectful.

Significantly, the Plaintiff was represented by David Amdur, Associate Director of the UConn-AAUP, during all investigatory interviews, as well as during the disciplinary hearings with Dean Elliott and Provost Kennedy. (Exs. 2, 3). Moreover, the disciplinary process was *not expedited* as Plaintiff was afforded more than the minimum time between steps of the process required by the collective bargaining agreement since more than eleven (11 weeks) elapsed between the **May 29, 2018** notification to the Plaintiff that the disciplinary process was being initiated and the hearing before Provost Kennedy on **August 16, 2018**.

On **August 21, 2018** Plaintiff's former Administrative Assistant, Melissa Burk, dually filed a complaint dated August 15, 2018 to the EEOC/CHRO naming Plaintiff and UConn as Respondents.[3] (Ex. 7, Filed Under Seal). The Burk complaint alleged under oath that she had a sexual relationship with her supervisor, the Plaintiff, that was not consensual.

Plaintiff's employment with UConn ended on **August 29, 2018**. *Compl.*, ¶14. On that date, Plaintiff sent his resignation via email to Provost Kennedy, saying: "Dear Provost Kennedy, I am writing to inform you that I am resigning my position as a Professor at the University of Connecticut as of today (August 29, 2018). Regards. Ram Gopal." (Ex. 8). Provost Kennedy promptly responded to Plaintiff, copying AAUP Executive Director Michael Bailey and AAUP Associate Director David Amdur, via email on **August 30, 2018**, saying, "Dr. Gopal: Please see the attached acceptance of your resignation from the University of Connecticut." That email appended a one page letter dated August 29, 2018. *Compl.*, ¶48. (Ex. 8). Provost Kennedy notified the Plaintiff that his resignation would be considered as "not in good standing."

By resigning, Plaintiff chose not to exercise his rights to the process to challenge any discipline provided by the collective bargaining agreement between the Respondent and the AAUP, up to and including arbitration. (Ex. 9).[4]

Now Plaintiff claims that the Defendants violated the Plaintiff's property rights by violating the terms of the collective bargaining agreement between UConn and the AAUP. *Compl.*, ¶53.

---

[3]   Plaintiff was represented by Attorney Michael J. Rose in regard to Ms. Burk's August 2018 CHRO complaint naming him as a Respondent. That August 15, 2018 complaint alleged that Gopal sexually harassed her from 2015 - 2018, and that as his subordinate, she was coerced into engaging in an inappropriate relationship with him. (Ex. 7, Filed Under Seal August 15, 2018 CHRO Complaint No. 1940078/ EEOC No. 16A201801673, *Melissa Burk v. Ram Gopal, University of Connecticut*).

[4]   Although it does not affect the grounds for dismissal, Plaintiff incorrectly alleges that he was terminated just short of twenty-five years of service. However, Plaintiff's allegations about his pension eligibility are incorrect. As of August 29, 2018, the effective date of his resignation, he had only 21 years, 5 months, and 18 days of creditable State service in SERS Tier II as demonstrated in the records provided to the Plaintiff and his current counsel in the April 15, 2019 Response to his CHRO complaint.

Significantly, Plaintiff does *not* allege that he pursued a grievance for violation of the applicable collective bargaining agreement.  Plaintiff never sought to rescind his resignation. Notably, Plaintiff never claimed he was not afforded fair representation ("duty of fair representation") by the AAUP at all stages of the investigations and disciplinary process.

Plaintiff alleges that he suffered the following discriminatory and adverse employment actions: he was subjected to a hostile work environment from March 2018 to August 29, 2018 (when he was notified of the investigations until his resignation); was threatened with criminal prosecution if he did not resign; was denied the opportunity of proper union representation during a "rushed termination process." *Compl.*, ¶53.

Plaintiff also alleges that "this case involves denial of due process, systemic discrimination and unequal treatment based upon race." *Compl.*, ¶12. Plaintiff alleges he was subjected to disparate treatment in the manner in which the investigations were initiated, conducted and finalized, and by the termination of his employment. *Compl.*, ¶50. He alleges he was treated differently than other employees based upon his race Asian-American, color, national origin, and ancestry. *Compl.*, ¶51. While Plaintiff repeatedly alleges that he is Asian, he asserts that "UConn has a pattern and practice of treating minority individuals of color differently than their **non-black cohorts**." *Compl.*, ¶41.

Importantly, Plaintiff *does not* allege that any of his claimed similarly situated Caucasian employees had been the subject of a complaint of misconduct of a similar nature (alleged to have sexually harassed a subordinate and to have engaged in an amorous or sexual relationship with the subordinate who traveled with the supervisor/comparator) or that they held the same positions as the Plaintiff and had the same Dean or Provost. *Compl.*, ¶52.

### III.   <u>STANDARD FOR A MOTION TO DISMISS</u>

A motion to dismiss pursuant to Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. The plaintiff, as the party asserting such jurisdiction, has the burden of proving its existence. *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996). The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). *Id.*

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Serv. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quoting *Omni Capital Int'l, Ltd v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). "[W]hen a defendant moves to dismiss under Rule 12(b)(5) [for insufficient service of process], the plaintiff bears the burden of proving adequate service." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) (quoting *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)).

A motion to dismiss pursuant to Rule 12(b)(6) tests the adequacy of the complaint, and whether, based on the pleading, the plaintiff can prove a set of facts that would entitle her to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland,* 709 F.3d 109, 120 (2d Cir. 2013). Under Rule 12(b)(6) a party may move to dismiss a matter for failure to state a claim upon which relief may be granted.  Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule

12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).

However, courts do not accept as true the plaintiff's legal conclusions, and "threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678.  "Although a complaint "need not give plausible support to the ultimate question of

whether the adverse employment action was attributable to discrimination" to state a Title VII

claim, it must offer "plausible support to a minimal inference of discriminatory motivation."

*Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)." *Kairam v. W. Side GI, LLC*, No. 19-

447-CV, 2019 WL 6691512, at *2 (summary order)(December 9, 2019).

As discussed below, the Plaintiff who resigned his employment has not set forth sufficient

allegations to meet the pleading requirements of *Iqbal*.  Thus, all Counts must be dismissed for

failure to state a claim upon which relief can be granted.

## IV.   ARGUMENT

### A.   Since The Individual Defendants Are Not Plaintiff's Employer, His Title VII Claims Against Them Should be Dismissed (Count One).

While Plaintiff asserts Title VII claims in Count One directed at the Defendants, Title VII

does not create liability in individual supervisors and co-workers who are not the Plaintiffs' actual

employers.  42 U.S.C. § 2000e–5(e); *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir.2010); *Raspardo v.*

*Carlone*, 770 F.3d 97, 113–14 (2d Cir. 2014). Title VII applies only to discriminatory practices by an

employer and Plaintiff *does not* allege that these individuals were her employer. "[U]nlike employers, individuals are not subject to liability under Title VII." *Patterson v. Cnty. Of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (dismissing Title VII claims against individual defendants) (quotation marks omitted); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) ("an employer's agent may not be held individually liable under Title VII"). Thus, the Title VII claims asserted against the individual Defendants must be dismissed.

**B.** **Both The Eleventh Amendment And Sovereign Immunity Bar The Claims Against The Defendants in Their Official Capacities[5] (Counts Two and Three).**

The Plaintiff asserts claims of Fourteenth Amendment procedural due process and Equal Protection pursuant to 42 U.S.C. §1983 against UConn and the individual Defendants in their official capacities for money damages and declaratory and injunctive relief.[6] These claims are all barred by the Eleventh Amendment and, therefore, must be dismissed for lack of subject matter jurisdiction.

In order to state a claim under §1983, a plaintiff must allege a deprivation of constitutional rights by a "person" acting under color of law. Section 1983, however, does not override the Eleventh Amendment, *Quern v. Jordan*, 440 U.S. 332, 340-42 (1979), which precludes suits for money damages in federal court against the State and state officials acting in their official capacities absent a waiver by the State or a valid abrogation by Congress. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). In view of Eleventh Amendment immunity, the State as well as state agencies and state officials acting in their official capacities are not considered "persons" under §1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Therefore, the Court lacks subject matter jurisdiction over the

---

[5] There is no dispute that Congress specifically provided that Title VII applies to the states.

[6] The Complaint refers collectively to "Defendants'" conduct and does not exempt UConn as a state agency or the official capacity Defendants.

Plaintiff's claims for money damages against UConn and the individual Defendants in their official

capacities and these claims must be dismissed.

In addition to money damages, the Plaintiff seeks declaratory and injunctive relief. *Compl.,*

¶¶101, 111, 112**.**  In his Request for Relief, Plaintiff further seeks prospective injunctive relief and a

declaratory judgment. *Compl., Request for Relief* ¶3.

As to UConn, any injunctive and declaratory relief claims are barred as the state has not

consented to suit.  *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Pennhurst State Sch. & Hosp. v.*

*Halderman,* 465 U.S. 89, 100 (1984) (Eleventh Amendment "jurisdictional bar applies [to states and

their agencies] regardless of the nature of relief sought.").

As to the individual Defendants, "[a] state official, when sued for injunctive relief, would be

a person under §1983 because official-capacity actions for prospective relief are not treated as

actions against the State." *Will*, 491 U.S. at 71 n.10.  Under *Ex Parte Young*, 209 U.S. 123, 155-56

(1908), suits for *prospective* declaratory or injunctive relief against state officials acting in their official

capacities for *continuing* violations of federal law are not precluded by the Eleventh Amendment.  *Id.*

at 155-59; *see e.g., Fresh Start Substance Servs. LLC v. Galvin*, 599 F. Supp. 2d 279, 282-83 (D. Conn.

2009).  In determining whether the *Ex Parte Young* exception applies, the relevant inquiry for the

court is "whether the complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

The *Ex Parte Young* exception to Eleventh Amendment immunity does not apply to claims against

state officials seeking declaratory or injunctive relief for prior violations of federal law.  *See Shakir v.*

*Derby Police Dept.*, 284 F. Supp. 3d 165, 211 (D. Conn. 2018) (citing cases).

As an initial matter, the Plaintiff has not stated a claim for injunctive or declaratory relief; his

requests for injunctive and declaratory relief are entirely conclusory and inadequately pled.  The

Plaintiff's requests are general and he does not request any specific declaratory or injunctive relief.

*See Moore v. Connecticut Dep't of Correction*, No. 3:14-CV-01002 JAM, 2015 WL 778626, at *2 (D. Conn. Feb. 24, 2015) (citing cases wherein general and unspecific requests for declaratory and injunctive relief dismissed).

Moreover, the Plaintiff's requests for declaratory and injunctive relief are not prospective. The Plaintiff does not allege how the requested relief would remedy a future constitutional violation by the Defendants. The Plaintiff's requests for injunctive and declaratory relief concern alleged prior violations of federal law, not ongoing violations. *See Shakir*, 284 F. Supp. 2d at 211.

This Court lacks subject matter jurisdiction for the claims against the Defendants in their official capacity since they barred by the Eleventh Amendment of the United States Constitution and sovereign immunity. To the extent, Plaintiff's Complaint could be construed as asserting official capacity damages claims, those claims must be dismissed because the Eleventh Amendment bars the award of money damages against state officials in their official capacities. *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003).

The Eleventh Amendment bars lawsuits against states absent consent from the state or abrogation of the immunity by Congress under § 5 of the Fourteenth Amendment. *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011), which held that "absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." These claims are barred by sovereign immunity and are, as a matter of law, actually directed at their respective state agency, UConn, which is not a "person" for the purposes of 42 U.S.C. §1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (holding that the Eleventh Amendment also precludes claims against state officials in their official capacity for damages). In enacting §1983, Congress did not abrogate the sovereign immunity of the states under the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 341–42 (1979). The Eleventh Amendment immunity to which a state official is entitled in a §1983 action depends on the capacity in which the official is sued – *i.e.*, whether that official is

12

being sued in his or her official or individual capacity. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). If a §1983 suit against a state official in his or her *official* capacity seeks *money damages*, the state is deemed to be the real party in interest because an award of damages would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994). Under such circumstances, the action is deemed to be against the State so that the State official is entitled to Eleventh Amendment immunity. *See Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."). It is thus well settled that neither states, nor state officials acting in their official capacity, are "persons" subject to liability under §1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

### 1.     Claims Against The State Are Also Barred By Sovereign Immunity

Courts have long recognized that the common law doctrine of sovereign immunity bars suit against the State except where the State, by appropriate legislation, consents to be sued. *DaimlerChrysler Corp. v. Law*, 284 Conn. 701, 711 (2007).[7] The doctrine of sovereign immunity applies not only to the State itself, but also to its officers and agents. *Schub v. Department of Social Services*, 86 Conn. App. 748, *cert. denied*, 273 Conn. 920 (2005) (claims against state agency barred); *Canning v. Lensink*, 221 Conn. 346 (1992) (claims against Commissioner barred). As the Connecticut Supreme Court has explained, "because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." *DaimlerChrysler Corp.*, 284 Conn. 701, 711 (2007). Once the State has asserted a sovereign immunity defense, the plaintiff bears the burden of establishing that sovereign immunity is inapplicable. See *C.R. Klewin N.E., LLC v. Fleming*, 284 Conn. 250, 258-59 (2007).

---

[7]     There is no allegation that the Plaintiff has received permission to sue from the Claims Commissioner or even sought such permission. Conn. Gen. Stat. §4-142.

Sovereign immunity also applies to actions against state officials sued in their official capacity for money damages. *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002); *Edelman v. Jordan*, 415 U.S. 651, 664–66 (1974). *See Osorio v. Connecticut*, No. 3:17-CV-1210 (CSH), 2018 WL 1440178, at *3. Under Connecticut law, if the plaintiff's complaint reasonably may be construed to bring claims against the defendant in his individual capacity, then sovereign immunity would not bar those claims. *Staton v. Cassavechia*, No. 2011 WL 3040911, at *3 (D. Conn. July 25, 2011) (Hall, J.) (quoting *Miller v. Egan*, 265 Conn. 301, 307 (2003)). Under Connecticut law, "[t]hat the plaintiff purports to sue the defendants . . . in their individual capacities is not, in itself, determinative of whether the state is the real party in interest" for sovereign immunity purposes. *Cimmino v. Marcoccia*, 149 Conn. App. 350, 359 (2014).

Accordingly, as to Plaintiff's claims against the Defendants in their official capacities, including for damages and/or retrospective relief for a violation of federal law under section 1983, they are not "persons" subject to section 1983 liability and must be dismissed.

### C.     Plaintiff Does Not Allege A Sufficient Title VII Claim Against UConn (Count One)

Plaintiff's cursory allegations are insufficient to state a claim for a violation of Title VII based on race discrimination. To withstand a motion to dismiss a Title VII claim, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2d Cir. 2015).

#### 1.     Hostile Work Environment

To state a claim for a hostile work environment in violation of Title VII, requires the plaintiff to show that "the workplace is permeated with discriminatory intimidation, ridicule, and

insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)

(internal citation and quotation marks omitted)); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 116 (2002). Furthermore, "[a]n individual may be held liable under ...§1983 only if that

individual is 'personally involved in the alleged deprivation.'" *Littlejohn v. City of New York*, 795 F.3d

297, 314 (2d Cir. 2015). If the defendant is a supervisor, then "'a plaintiff must also establish that the

supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. In the

§1983 context, a plaintiff must establish that a defendant's behavior constituted intentional

discrimination on the basis of a protected characteristic ...'" *Littlejohn*, 795 F.3d at 314.

Plaintiff does not meet the pleading standards since he simply alleges conclusions that he

suffered a hostile work environment during the time the complaint against him was being

investigated and as he proceeded through the disciplinary process.  The conclusory allegations are,

"Plaintiff was subjected to a hostile work environment from March 2018 to August 29, 2018, the

time he left UConn." and "Defendant and its subordinates, conspired to build a pretextual case to

terminate plaintiff's employment and academic standing by manufacturing false and damaging

allegations, filing false and damaging reports, creating a hostile and discriminatorily antagonistic

work environment in order to force plaintiff to leave his work position." (*Compl.* ¶¶ 54a, 79).  These

are clearly not sufficient to state a claim for hostile work environment.

While to avoid dismissal of a claim alleging hostile work environment, the plaintiff need only

plead facts to support the conclusion that he was faced with harassment of such quality or quantity

that a reasonable employee would find the conditions of his employment altered for the worse, this

complaint is devoid of allegations that tie the Defendants' actions to Plaintiff's race or that meet the

severe and pervasive standard.  There are no allegations that Defendants made racial comments or

that allege they created an abusive workplace based upon Plaintiff's race.  Nor does the complaint

15

provide sufficient allegations that the workplace was permeated with discriminatory intimidation sufficiently severe or pervasive to alter the conditions of the Plaintiff's employment or create an objectively abusive working environment.  Thus, the hostile work environment claim against all Defendants must be dismissed.

### 2. Plaintiff Does Not Sufficiently Allege An Adverse Action

As to adverse actions, Plaintiff claims to have been forced to resign in August 2018 and to have suffered a hostile work environment from March 2018 when investigations of his conduct began.  A constructive discharge occurs when, "from an objective perspective, the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."  *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007)). The burden of showing constructive discharge is high. *See Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (noting that standard for constructive discharge is higher than standard for establishing hostile work environment).  Thus, an employee who resigns cannot rely merely on the fact that that he disagreed with his employer's criticisms of his work, failed to receive an anticipated raise, or was subject to "working conditions that were difficult or unpleasant."  *Id.* The factual question presented is whether "a rational trier of fact" could find that the employment conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* (citations omitted); *see Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 724 (E.D.N.Y. 2015)(where a "reasonable person subjected to the same conditions as the plaintiff would have felt compelled to step down," constructive discharge claim not subject to dismissal).

Plaintiff merely asserts conclusory allegations that he was forced to resign, and does not even plead that he suffered "constructive discharge."  First, there is no question that Plaintiff resigned. His letter of resignation is before the and despite the language of his letter of resignation, Plaintiff

16

claims that he was forced to resign.  The law is clear, a claim of constructive discharge is not

properly maintained upon the allegation that a plaintiff, fearing termination, resigned rather than

face disciplinary charges.  *See Collazo v. County of Suffolk,* 163 F. Supp. 3d 27 (E.D.N.Y. 2016); *Bailey v.*

*New York City Bd. Of Educ.*, 536 F. Supp.2d 259, 266 (E.D.N.Y. 2007).  Even if Defendants

threatened Plaintiff with termination (which the allegations show was one possible discipline

resulting from Plaintiff's misconduct) a threat of termination alone would be insufficient to sustain a

claim of constructive discharge.  *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp.2d 215, 234

(E.D.N.Y. 2012).

### 3.    Plaintiff May Not Assert A Title VII Pattern and Practice Claim

Plaintiff alleges a "pattern and practice of discrimination within the workplace." (*Compl.*

¶58[8].)  The Second Circuit confirmed in *Chin v. Port Authority of New York & New Jersey*, 685 F.3d

135, 2012 U.S. App. LEXIS 14088 (2d. Cir. July 10, 2012) that private, non-governmental plaintiffs,

such as Plaintiff, may not use the pattern and practice method of proving discrimination except in

class action cases.  This case is not a class action.  The Supreme Court originally endorsed the

pattern and practice method of proof for use in class actions in *Franks v. Bowman Transportation Co.*,

424 U.S. 747 (1976), and it was subsequently extended to suits by the government seeking injunctive

relief in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1997).

Under the pattern and practice method of proof, once the plaintiffs demonstrate the

existence of a policy of discrimination by an employer, the burden shifts to the employer to prove

that it did not discriminate against plaintiffs pursuant to that policy. Shifting the burden of

persuasion in that manner makes it easier for plaintiffs to prevail, and contrasts with the familiar

*McDonnell Douglas* framework that applies in standard disparate treatment cases, whereby the burden

---

[8]    At paragraph 58, Plaintiff alleges, "UCONN has a pattern and practice of treating minority individuals of
color differently than their non-black cohorts."  Confusingly, Plaintiff repeatedly alleges that his protected
class is *Asian-American, not black. Complaint,* ¶¶4, 51, 70, and 71.

of production shifts between the parties, but the burden of persuasion remains always with the plaintiff.  Accordingly, the Second Circuit in *Chin*, like every other circuit court that has considered this question, concluded that allowing private, non-class plaintiffs such as Gopal to avail themselves of the burden allocation advantages of the pattern and practice method of proof "would conflict with the Supreme Court's oft-repeated holding in the context of disparate-treatment, private non-class litigation that '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149 (2d Cir. 2012)(quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Accordingly, regardless of the reference to "pattern and practice" in his complaint, Plaintiff's claim should be evaluated as a standard disparate treatment claim.

### D.    Plaintiff's Procedural Due Process Claim Must Be Dismissed (Count Two)

The Plaintiff's procedural due process claim against the individual Defendants must be dismissed because it is entirely conclusory and does not meet Rule 8 pleading requirements. *Compl., Count Two*.  While FRCP 8(a) only requires that a complaint set forth a short and plain statement of the claim showing that the pleader is entitled to relief, the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.*  A complaint must contain enough factual material to "'state a claim to relief that is plausible on its face,'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570), and should be dismissed where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible [.]" *Twombly,* 550 U.S. at 570.

To prevail upon a procedural due process claim, the plaintiff must show first the existence of a constitutionally protected property or liberty interest, and that the plaintiff did not receive adequate process before being deprived of that interest.  *Fresh Start Substance Servs., LLC v. Galvin*,

599 F. Supp. 2d 279, 283 (D. Conn. 2009), *citing Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976); *Adams v. Suozzi*, 517 F.3d 124, 127 (2d Cir. 2008).  "To have a property interest in a government benefit, a person clearly must have more than an abstract need . . . for it. . . . He must . . . have a legitimate claim of entitlement to it. . . .  Such entitlements are created by existing rules that stem from independent sources of state law."  *Petrario v. Cutler*, 187 F. Supp. 2d 26, 34 (D. Conn. 2002) (citation omitted).

### 1.   Plaintiff Failed To Use The Process Afforded Him

The Due Process Clause is violated when a claimant is deprived of a protected liberty or property interest without adequate process.  *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). In determining how much process is adequate, we look to "[f]ederal constitutional standards rather than state statutes [to] define the requirements of procedural due process."  *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987). "[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action ... *does not settle what protection the federal due process clause requires*." *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) (emphasis added) (internal quotation marks and citation omitted); *see also Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019)."And although state law may create property interests, it cannot, of its own force, create a clearly established substantive *federal* constitutional right.  *See Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 9 (1978) ("Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." (internal quotation marks omitted))." *Mudge v. Zugalla*, 939 F.3d 72, 80 (2d Cir. 2019).

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process.  *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019).  The

Supreme Court in *Cleveland Board of Education v. Loudermill* held that pre-deprivation process requires: (1) "oral or written notice of the charges against [the employee]"; (2) "an explanation of the employer's evidence"; and (3) "an opportunity to present [the employee's] side of the story" and "to present reasons, either in person or in writing, why [the] proposed action should not be taken." 470 U.S. 532, 546 (1985).

Plaintiff asserts a protected property interest in his continued employment. *Compl.*, ¶90. Plaintiff alleges that the collective bargaining agreement Article 27 B provides that union members are entitled to a hearing before dismissal.[9]  *Compl.*, ¶89. Yet, Plaintiff had hearings, and the opportunity to present his position during the investigations where he was represented.  *Despite his resignation before any final decision was issued regarding discipline,* Plaintiff claims that he was deprived of due process because he "was denied a meaningful notice and opportunity to be heard, a hearing, before he was terminated from his position." *Compl.*, ¶¶90, 93.

Plaintiff failed to exhaust the procedures available to him, which include the collective bargaining grievance process as a union member, and the procedures for review and relief by the University's policies, including an investigation for discriminatory treatment. The Plaintiff admits that the terms and conditions of his state employment were subject to the AAUP collective bargaining agreement.  (*Compl.,* ¶¶89, 90; Ex. 9, Excerpts of AAUP Collective Bargaining Agreement).  He, however, does not allege that he attempted to use the grievance procedures available through the collective bargaining agreement and, therefore, he has not established that he exhausted his administrative remedies, depriving the Court of subject matter jurisdiction.  He alleges

---

[9]    Plaintiff had no contractual right to work at UConn outside of the collective bargaining agreement. State employees do not have contractual employment rights, absent a clear and unambiguous expression of legislative intent to the contrary.  *See Pineman v. Oechslin,* 195 Conn. 405, 416 (1985). *See also Chotkowski v. State of Connecticut,* 240 Conn. 246, 690 A.2d 368 (1997); *Nodoushani v. S. Connecticut State Univ.,* No. NNHCV084030030S, 2008 WL 3306728, at *2. There is no dispute that "tenured public employees have a constitutionally protected property interest in their employment." *Radolf v. Univ. of Conn.,* 364 F. Supp. 2d 204, 210 (D. Conn. 2005)(citing *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7,* 167 F.3d 784, 789 (2d Cir.1999)).

that he "has not been afforded 'notice and an opportunity to be heard'", but he has not established

that he utilized the grievance process available to him and resigned before he was actually

disciplined.  "Although a plaintiff is generally not required to exhaust administrative remedies before

bringing a §1983 suit, this rule does not apply to procedural due process challenges if the plaintiff

failed to avail himself of the very administrative procedures he attacks as inadequate." *Hedges v. Town*

*Of Madison*, No. 309CV1468PCD, 2010 WL 1279071, at *7 (D. Conn. Mar. 30, 2010) (citation

omitted), *aff'd in part, rev'd in part and remanded,* 456 F. App'x 22 (2d Cir. 2012); *see also Russo v. City of*

*Hartford*, 158 F. Supp. 2d 214, 224-25 (D. Conn. 2001)(dismissing procedural due process claim

because the plaintiff was subject to a collective bargaining agreement and did not allege that he

attempted to use the grievance procedures available to him and availed himself of the right he

claimed was violated)[10].

      In a recent matter involving a university employee, the Second Circuit addressed whether

there is clearly established federal law holding that the Due Process Clause is violated when the

employer has provided the plaintiff with an opportunity to receive the process required by

*Loudermill*, but the plaintiff did not make use of that process. *Tooly v. Schwaller*, 919 F.3d 165, 174 (2d

Cir. 2019).  The Court noted the established precedent, "As we have held, a failure to submit to the

[disciplinary] procedures precludes consideration of the fairness of those proceedings in practice.

*Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988)." *Tooly v. Schwaller*, 919

F.3d 165, 175 (2d Cir. 2019).

      Significantly for this matter, the Second Circuit also noted that since Tooly never appeared

for the interrogation meeting, it could not say with certainty what would have occurred at the

meeting, or whether the meeting would or would not have been fair. *Tooly v. Schwaller*, 919 F.3d 165,

---

[10]   In *Russo,* after the state defendants asserted that under the Eleventh Amendment to the U.S. Constitution, the court lacked subject matter jurisdiction over any claims for money damages brought against them in their official capacities, plaintiff withdrew those claims. *Russo v. City of Hartford*, 158 F. Supp. 2d 214, 230–31 (D. Conn. 2001).

175 (2d Cir. 2019).  Likewise, this Plaintiff chose to not use the processes available to him through the collective bargaining agreement.  Plaintiff's complaint demonstrates that he chose to fail to submit to the disciplinary procedures afforded him through the collective bargaining agreement. *Tooly v. Schwaller*, 919 F.3d 165, 175 (2d Cir. 2019).  If Plaintiff had exercised his due process rights as provided by the collective bargaining agreement, he would have received all of the procedural protections required and would have had the right to appeal any discipline through the labor grievance process.  There is no dispute that Plaintiff did not have adequate due process available to him through the collective bargaining agreement's grievance process, which *he chose not to exercise.* Since Plaintiff chose to resign rather than to exercise his rights to this process, he has failed to state a claim for a constitutional violation.

### 2.      Plaintiff Has Not Stated A Liberty-Interest Due Process Claim

Through conclusory statements lacking sufficient facts Plaintiff also attempts to also bring a "stigma-plus" claim against numerous Defendants.  The Second Circuit has described this as "a species within the phylum of [liberty-based] procedural due process claims." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006). To prevail on such a claim, a plaintiff must plausibly allege "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted); see also *Waronker v. Hempstead Union Free Sch. Dist.*, 788 Fed. Appx. 788, 794 (summary order)(2d Cir. 2019).  However, the Plaintiff never alleges what each individual Defendant allegedly said that meets these requirements.

This Court should dismiss this claim on the first prong of the stigma-plus test, since the complaint's cursory allegations fails to identify any "false, stigmatizing statements" that each individual Defendant made about Plaintiff.  Beyond the mere conclusory assertions that Defendants

Herbst, Kennedy, Elliot and Reitz made "false stigmatizing statements" which were "made in close temporal relationship to plaintiff's dismissal from his government employment" (despite Plaintiff's *admitted resignation after Ms. Burk filed her CHRO/EEOC sexual harassment complaint against him as a Respondent*), the complaint is devoid of any specific statements made about him, much less ones capable of supporting a stigma-plus claim. *Compl.*, ¶¶95 - 98.

The complaint still fails to satisfy the "plus" requirement. To plead an adequate "plus" factor, a plaintiff must identify "some tangible and material state-imposed burden" that is separate from the deleterious effects flowing directly from the stigmatizing statement. *Velez*, 401 F.3d at 87 (internal citation omitted); *see also Sadallah*, 383 F.3d at 38 ("[The] deleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a plus under the stigma plus doctrine." (internal quotation marks and alterations omitted)). Burdens that satisfy the "plus" prong include "the deprivation of a plaintiff's property and the termination of a plaintiff's government employment." *Sadallah*, 383 F.3d at 38 (internal citations omitted). By contrast, the Second Circuit precedent instructs that a plaintiff's refusal to exercise his contractual rights to a hearing and further process available under the collective bargaining agreement would not constitute an adequate "plus" factor since he suffered no due process violation. *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019).

Moreover, before his August 29, 2018 resignation, Plaintiff conceded in his April 16, 2018 letter to Provost Kennedy that he sent his subordinate Melissa Burk over a dozen inappropriate messages for which he "profusely apologized." (Ex. 9 ).

Further, Plaintiff's resignation does not satisfy the "plus" requirement because he was never suspended nor terminated – *he suffered no financial loss as a result of the Defendants' actions but chose to resign rather than face the possible consequences for his actions*. Nor can Plaintiff avoid dismissal of his stigma-plus claim by simply alleging that he suffered "public abuse and humiliation" at the hands of Defendants.

23

Instead, Plaintiff must identify "a state-imposed burden or alteration of status ... [that is] *in addition* to the stigmatizing statement." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted). Because the complaint fails to do so, Plaintiff's cursory stigma-plus claim must be dismissed. *See Waronker v. Hempstead Union Free Sch. Dist.*, 788 Fed. Appx. 788, 794–95 (summary order)(2d Cir. 2019).

The Plaintiff's failure to set forth a sufficient factual basis whatsoever for his procedural due process claim renders it implausible. *See DeLoreto v. Ment*, 944 F. Supp. 1023, 1034 (D. Conn. 1996) (dismissing procedural due process claim where plaintiffs failed to allege "on what basis they [were] claiming a property interest" and as to "what procedural due process rights they [were] claiming entitlement"); *Russo v. City of Hartford*, 158 F. Supp. 2d 214, 232 (D. Conn. 2001) (dismissing procedural due process claim as "nothing more than bald assertions and conclusions of law" where plaintiff did not specifically allege how he was denied an entitlement and to what process he was entitled) (citation omitted; quotation marks in original). Accordingly, the Plaintiff's procedural due process claim must be dismissed for lack of subject matter jurisdiction or, alternatively, failure to state a claim.

**E.    Plaintiff Has Not Stated an Equal Protection Claim (Count Three)**

Section 1983 and the Equal Protection Clause protect public employees from various forms of employment discrimination. *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006); *Chizman v. Nassau Bd. Of Cooperative Educ. Ser*vs., 2015 WL 13721528, at * 3 (E.D.N.Y. August 20, 2015). A Section 1983 claim requires the plaintiff to establish two elements: "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Clay v. County of Suffolk*, 2019 WL 4346446, at * 11 (E.D.N.Y. September 11, 2019).

As to the individual Defendants, proof of discriminatory intent is required to show a violation of the Equal Protection Clause. *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003). The requisite discriminatory intent must be held by the state official in his/her individual capacity. Thus, liability for an Equal Protection Clause violation requires personal involvement by a defendant, who must act with discriminatory purpose. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences.... It instead involves a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' the action's adverse effects upon an identifiable group.'" *Id.* (quoting *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)). "If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a §1983 action against the defendant." *Id. See Hubert v. Dep't of Corr.*, No. 3:17-CV-248 (VAB), 2018 WL 1582511, at *13, *reconsideration denied,* No. 3:17-CV-00248 (VAB), 2018 WL 3350334.  The plaintiff must allege that he is the victim of "intentional and arbitrary discrimination," *i.e.,* "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Lyon v. Jones*, 260 F. Supp. 2d 507, 513 (D. Conn. 2003), *aff'd*, 91 Fed.Appx. 196 (2d Cir. 2004) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000)).

To prevail on a claim of selective enforcement, plaintiff must demonstrate that such differential treatment was based on impermissible considerations such as race. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. Cty. Of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). In order to be similarly situated in "all material respects," "a plaintiff must show that [his] co-employees were subject to the same performance evaluation and discipline standards" and "engaged in

comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).  Plaintiff's making

such claims "must show an extremely high degree of similarity between themselves and the persons

to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

 Plaintiff's allegations that employees who were not Asian Americans were treated more

favorably are conclusory and vague and do not give rise to an inference of discrimination.  *Holcomb v.*

*Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Plaintiff conclusory alleges that Caucasian employees

were treated differently than the Plaintiff, but none of them were similarly situated or accused of the

same conduct as the Plaintiff. *Compl.*, ¶52. Crucially, Plaintiff admits that he was investigated only

*after* the December 14, 2017 an email to President Herbst, copying State Representative Melissa

Ziobron, with the subject line, "#me too and state travel fund issues" saying,

> With the recent widespread of #MeToo cases, UCONN should look into the
> appropriateness of its business school OPIM department head traveling together with
> secretary to academic conferences.  Is there any wrongdoing and is the travel fund used
> properly?  Apologize for remaining anonymous.  I need my job.

(Ex. 1).  *See Compl.*, ¶26. *Plaintiff concedes that it was a result of this email complaint that UConn began*

*investigating these allegations. Compl.*, ¶¶17, 18, 19.  However, Plaintiff does *not allege that any of his alleged*

*Caucasian comparators were the subject of comparable complaints.*  Plaintiff's allegations that James Marsden,

a UConn Board of Trustees Distinguished Professor and former department head was not

investigated or disciplined even though he used the same travel and wage approvals as Plaintiff are

insufficient since there was no complaint to investigate, nor does Plaintiff even include any time

frame for these alleged actions. *See Compl.*, ¶52.

 Plaintiff also compares himself to other School of Business employees who held very

different positions than he: Rachel Greene, School of Business Fiscal Manager; Cyndi Soucy, School

of Business-Director of Administration; Glenn Harzewski, Travel Services Travel Manager, and

Defendant Dean Elliot. *Compl.*, ¶¶38, 52. Plaintiff alleges that Defendants have not initiated

investigation, or any discipline, against Elliot, Marsden, Soucy, Greene or Harzewski-Burl, all

Caucasian, who approved or used travel and compensation that plaintiff was disciplined for abusing. *Compl.*, ¶52.  Yet, Plaintiff does not allege that any of these employees were accused of misconduct as he was, including an inappropriate amorous relationship with a subordinate

In the most astonishing allegation, Plaintiff even alleges that Jim Calhoun is a similarly situated comparator even though Mr. Calhoun "was Head Coach of the Defendant's Men's Basketball Program and found to have engaged in conduct in violation of NCAA rules and regulations following an investigation by the NCAA and UCONN." *Compl.*, ¶52. Clearly, Coach Calhoun held a far different position than the Plaintiff, and the allegations of alleged wrongdoing are completely unrelated to the complaints about the Plaintiff's conduct.[11]

These individuals are not alleged to have been the subject of complaints about their misuse of travel and compensatory time policies or to have admitted to inappropriate messages with a subordinate, or even being investigated for an improper relationship with a subordinate – as such, they are not similarly situated. Plaintiff has failed to allege that these claimed comparators held the same position as Plaintiff or that they engaged in comparable behavior that Plaintiff was alleged to have engaged in (including his admitted inappropriate messages).  *Graham*, 230 F.3d at 40.

Certainly, this Plaintiff falls far short of alleging the necessary high degree of similarity between him and any alleged comparator. "Plaintiff does not allege that [s]he was treated differently from *any* identified individuals, let alone individuals who [s]he claims were similarly situated to h[er] in any respect." *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 434 (S.D.N.Y. 2013). Plaintiff merely recites that other similarly situated individuals were treated better, *but does not recite that these comparators were having a relationship with a subordinate in violation of UConn's policies or the subject of complaints about misuse of travel funds.*  Rather, Plaintiff makes conclusory allegations that Defendants selectively enforced the law and its policies. Yet, even "a faulty investigation is not in and of itself

---

[11]   Defendant UConn wishes to make it clear that the allegations against Coach Calhoun were fully investigated when made in 2011 and 2012.

evidence of pretext." *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 250 (N.D.N.Y. 2010); *see also Rodriguez v. City of N.Y.*, 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008) ("[T]he fact that an employee ... has evidence that the decision was objectively incorrect or was based on a faulty investigation, does not automatically demonstrate, by itself, that the employer's proffered reasons are a pretext.").

A §1983 plaintiff must claim that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action." *Naumovski*, 934 F.3d at 214. Plaintiff's allegations fall far short of this standard. He simply asserts he "was treated differently from other similarly situated individuals," without pleading sufficient facts to support that bald assertion. Such a naked assertion has been found to be patently insufficient to survive a motion to dismiss in other cases," and this Court should reach the same conclusion here. *Vaher*, 916 F. Supp. 2d at 434 (citing cases, including *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010)); *see also Brooking v. New York State Dep't of Taxation & Fin.*, 2016 WL 3661409, at *10–11 (N.D.N.Y. July 5, 2016) (granting motion to dismiss after finding that "Plaintiff's Complaint identifies neither a specific instance of disparate treatment nor a specific, similarly situated comparator who was treated differently," and citing several cases reaching similar result); *Terrill v. Windham-Ashland-Jewett Cent. Sch. Dist.*, 176 F. Supp. 3d 101, 110–11 (N.D.N.Y. 2016) (similar).

Here, to the extent that Plaintiff claims he was selectively investigated and faced discipline because of his race, he has failed to establish that he is the "victim of 'intentional and arbitrary discrimination,' *i.e.*, 'that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Id.* at 513 (quoting *Olech*, 528 U.S. at 564–65). Crucially, Gopal has not asserted that his alleged similarly situated individuals held the same position as he did, or were found to have an romantic relationship with a subordinate like he did, nor does he allege that these comparators admitted to engaging in over a dozen inappropriate

28

messages with a subordinate. *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997.

Thus, Plaintiff's §1983 claim for selective enforcement must be dismissed for failure to state a claim.

In order to state an equal protection claim, the Plaintiff must allege that he was treated differently than others similarly situated and that such selective treatment was based on impermissible considerations. See *Heusser v. Hale*, 777 F. Supp. 2d 366, 385 (D. Conn. 2011) (citations omitted). The plaintiff has not stated a plausible equal protection claim. He has not set forth any factual allegations to establish that he was treated differently than others similarly situated based on impermissible considerations. Instead, he relies entirely on insufficient "threadbare recitals" and conclusory statements with respect to any claim for an equal protection violation. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (complaint including only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard), *quoting Twombly*, 550 U.S. at 555-57.

Clearly, the Plaintiff's allegations are insufficient to state a claim of an Equal Protection violation and must be dismissed.

### 1.      Equal Protection Claims Are Very Different From Title VII Claims

The Second Circuit recently noted the important differences between claims brought pursuant to §1983 alleging an Equal Protection violation and Title VII claims. *Naumovski v. Norris*, 934 F.3d 200, 211 (2d Cir. 2019). The *Naumovski* court noted four differences. First, a plaintiff advancing a claim pursuant to §1983 must plausibly allege that the deprivation was committed by a person acting under color of state law while Title VII has no such requirement. Second, unlike a Title VII claim, which may be brought only against the employing entity, a §1983 claim can be brought against any individual responsible for the discrimination. Third, while an employer may be liable under Title VII for any discriminatory conduct that can properly be attributed to the employer

through agency principles, §1983 does not permit such vicarious liability. If an individual] defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a §1983 action against the defendant.  The fourth crucial distinction between Title VII and §1983 claims is the required degree of causation. *Naumovski v. Norris*, 934 F.3d 200, 212–13 (2d Cir. 2019)

As the Supreme Court clarified in 2013, the disparate treatment provision of Title VII is unusual in that it incorporates a "lessened causation standard." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349, (2013). Under Title VII, a plaintiff may succeed simply by establishing that sex (or another protected characteristic) was a "motivating factor for any employment practice, even though other factors also motivated the practice." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349, (2013).

In contrast, a plaintiff pursuing a claim for employment discrimination under §1983 rather than Title VII must establish that the defendant's discriminatory intent was a "but-for" cause of the adverse employment action.  It is insufficient to establish simply that invidious discrimination was "a motivating factor" of the offending conduct. *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019). To establish "pretext" under §1983, a plaintiff must establish that the employer's stated reason would not, alone, constitute a *sufficient* basis for pursuing an adverse action. In other words, a §1983 plaintiff must establish that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action.  *Naumovski v. Norris*, 934 F.3d 200, 215 (2d Cir. 2019).

Moreover, Section 1983 claims for discrimination in public employment cannot be based on a *respondeat superior* or "cat's paw" theory to establish a defendant's liability.  *Naumovski v. Norris*, 934 F.3d 200, 222 (2d Cir. 2019).

As the Second Circuit noted recently, the standards for claims brought pursuant to 42 U.S.C. §1983 and the Equal Protection Clause of the Fourteenth Amendment particularly with respect to

vicarious liability and causation, are distinct from those brought under Title VII.  *Naumovski v. Norris*, 934 F.3d 200, 207 (2d Cir. 2019).

**2.**      **Plaintiff May Not Assert A Pattern or Practice For An Equal Protection Claim**

Moreover, while Plaintiff alleges that UConn had a discriminatory "pattern or practice," the Second Circuit has found that framework is ill-suited to the task of identifying which individual defendants engaged in purposeful discrimination in cases such as this one. As the Second Circuit said,

> Thus, to import the pattern-or-practice framework into the Equal Protection context would substantially circumvent the plaintiffs' obligation to raise a prima facie inference of individual discriminatory intent. If "[s]tatistics alone [could] make out a prima facie case of discrimination," *Robinson,* 267 F.3d at 158, a §1983 plaintiff could shift the burden to the defendant without any showing of individual discriminatory intent. Such a result would seem to contravene well-established precedent that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause" in a claim brought pursuant to §1983. *City of Cuyahoga Falls,* 538 U.S. at 194, 123 S.Ct. 1389 (internal quotation marks omitted).

*Reynolds v. Barrett*, 685 F.3d 193, 204–05 (2d Cir. 2012).  Accordingly, the allegations concerning pattern and practice fail to state a claim for a violation of the Equal Protection clause.

**F.**      **The Individual Defendants Are Shielded By Qualified Immunity From Claims Brought Pursuant To 42 U.S.C. §1983 (Counts Two and Three).**

Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The doctrine of qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Messerschmidt v. Millender,* 565 U.S. 535, 546 (2012) (internal quotation marks omitted).  It thus affords government officials "breathing room" to make reasonable - even if sometimes mistaken—decisions, and "protects all but the plainly incompetent or those who

knowingly violate the law" from liability for damages. *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012).  The Supreme Court has repeatedly recognized that for reasons "important to society as a whole" qualified immunity separately grants officials "immunity from suit." *White v. Pauly*, ___ U.S. ___, 137 S. Ct. 548, 551 (2017). Because qualified immunity is "an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Accordingly, the Supreme Court repeatedly has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Notably, qualified immunity shields government officials from claims based on *both* statutory and constitutional violations. *Colvin v. Keen*, 2018 WL 3865295, at *8 (2d Cir. Aug. 15, 2018).

The doctrine of qualified immunity in civil rights cases frequently comes before the Second Circuit.  In *McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004), the Second Circuit recognized that while qualified immunity is an affirmative defense, and an affirmative defense is normally asserted in an answer, it can be asserted in a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint.  386 F.3d at 435-36 (internal citations omitted). The court should apply the Rule 12(b)(6) standard in examining the substance of the qualified immunity doctrine.

In this case, all individual Defendants are entitled to qualified immunity because it was *not* clearly established that doing internal investigations of allegations of wrongdoing which violated state statute and UConn Policies, could be a violation of Plaintiff's rights or that the Plaintiff's refusal to utilize the process available to him through the collective bargaining agreement was a violation of his constitutional rights.  Thus, the law was not clearly established at the time of the alleged conduct by the Defendants. Moreover, Plaintiff has not alleged sufficient personal involvement of individual Defendants in that decision and process.

1.      **Existing Law.**

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established ***at the time of the challenged conduct.*** *Reichle v. Howards,* 566 U.S. 658, 664 (2012); *see Lane v. Franks*, __ U.S. __, 134 S. Ct. 2369, 2381 (2014).  In determining whether qualified immunity protects an official, "'[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix v. Luna*, 577 U.S. ____, 136 S.Ct. 305, 308 (2015) (*per curiam*) (emphasis in *Mullenix*)). For an official to lose immunity, "'in the light of pre-existing law,' the unlawfulness of the offic[ial]'s conduct 'must be apparent,'" *id.* at 1867 (quotation marks omitted), and "beyond debate." *Mullenix*, 136 S.Ct. at 308. Put differently, an official is immune from liability unless, under the particular circumstances the official faced, any "reasonable offic[ial]" would have "known for certain that the[ir] conduct was unlawful" under existing established precedent. *Ziglar*, 137 S. Ct. at 1867.  To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right. *Reichle v. Howards,* 566 U.S. 658, 664 (2012). It is not required to have a case a case directly on point, but ***existing precedent must have placed the statutory or constitutional question beyond debate.*** *See Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). The Supreme Court has expressly held that where - as here - there was no violation of clearly established law, courts may dismiss the claims against the defendant officials and need not address whether there was a violation of the law at all. *See, e.g.*, *Pearson*, 555 U.S. 223, 236 (2009).

a.      **The Second Circuit Has Recognized The Lack of Clearly Established Law**

As the Second Circuit opined on March 20, 2019, "No case, in this Circuit or elsewhere, that has been cited to us has held that, where the defendant provides an opportunity for the plaintiff to receive due process at a meeting and the plaintiff, even for potentially valid reasons, fails to appear,

the defendant must provide alternative procedures." *Tooly v. Schwaller*, 919 F.3d 165, 175 (2d Cir.

2019).  This Plaintiff failed to avail himself of the process available through this collective bargaining

agreement by resigning. Thus, this Court need not address whether the Plaintiff procedures were

constitutionally adequate because this issue is resolved on "clearly established law" grounds.  *See*

*Cerrone*, 246 F.3d at 199." *Tooly v. Schwaller*, 919 F.3d 165, 175 (2d Cir. 2019).

    **2.**    **§1983 Claims Must Be Evaluated For Each Defendant's Involvement**

The pleading requirements for §1983 liability requires that plaintiff alleges that *each* individual

capacity defendant acted with intent to harm the plaintiff.  Purposeful discrimination requires more

than "intent as volition or intent as awareness of consequences"; it involves a decisionmaker's

undertaking a course of action "'because of,' not merely 'in spite of,' [the action's] adverse effects

upon an identifiable group." *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279 (1979).

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to…§1983 suits,

a plaintiff must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution"). Plaintiff must allege, "personal involvement of [the

defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the  . .

. chain of command." *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985).  A public official can only

be liable if the official causes the harm.  *Baker v. McCollan,* 443 U.S. 137, 142 (1979); *Vippolis v. Village*

*of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985). "[T]here must be some showing of personal

responsibility" to support an individual capacity damages claim. *Duchesne v. Sugarman,* 566 F.2d 817,

830 (2d Cir. 1977); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir. 1987).  The pattern or practice

framework used for Title VII cases, *does not* apply when evaluating §1983 individual liability,

> [W]hen a plaintiff alleges that multiple individual defendants have engaged in uncoordinated
> and unplanned acts…each defendant is only liable under §1983 [for] his own actions….
> [Plaintiff] must [plausibly plead] that the actions of the individual appellees were motivated
> by [retaliatory] animus or ill-will…. **[B]ecause liability under §1983 requires personal
> involvement by a defendant, the "pattern-or-practice framework," which
> demonstrates that a pattern of [retaliation] exists in the aggregate at a corporate**

> entity, is **"ill-suited to the task of identifying which individual defendants engaged in purposeful discrimination" and cannot be imported into the §1983 context**…. [In] §1983 suits, a plaintiff must plead that each Government-official defendant, ***through the official's own individual actions***, has violated the Constitution…[and each] is only liable for his or her own misconduct…. In addition…a plaintiff must also establish that the [individual's] actions were the proximate cause of the plaintiff's constitutional deprivation [and] that [individual's] behavior constituted intentional [retaliation]…..

(emphasis added.) *Raspardo v. Carlone*, 770 F.3d 97, 115-16 (2d Cir. 2014). Nor are the individual Defendants liable simply by virtue of their position in the organizational chain of command because a subordinate may have committed a constitutional violation. *Blyden v. Mancusi,* 186 F.3d 252, 264 (2d Cir. 1999)(doctrine of *respondent superior* does not apply to Section 1983 actions). The plaintiff must allege specific knowledge of facts putting each individual defendant on notice of facts giving rise to a constitutional violation. *Poe v. Leonard,* 282 F.3d 123, 141 (2d Cir. 2002). The Plaintiff has not met this burden.

Defendants are clearly entitled to qualified immunity in this case. The gravamen of Plaintiff's allegations as to Defendants is that these Defendants investigated and held administrative proceedings regarding claims of fiscal irregularities by him as a UConn employee and an allegation sent to President Herbst (shared with a State legislator at the same time) that he violated UConn policies by sexually harassing and engaging in an inappropriate relationship with a subordinate. Simply because Plaintiff alleges that these charges are baseless is not enough to defeat qualified immunity. Plaintiff's allegations are "bare assertions" of a "conclusory nature" that cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). Importantly, the actual facts Plaintiff alleges directly contradict those conclusory assertions. Specifically, Plaintiff alleges that UConn investigated these allegations for months and Plaintiff was not only represented by his union, but also directly responded to these allegations presenting his side. Plaintiff participated in interviews as part of the Office of Institutional Equity and Office of University Compliance investigations, and reviewed and submitted a substantive written response (in excess of fifty pages,

35

with exhibits) to a draft of the Office of University Compliance report, and provided a written submission to Provost Kennedy. (Exs. 3, 4). Defendants' entitlement to qualified immunity is further buttressed by the Plaintiff's own admission in his August 16, 2018 appeal of Dean Elliot's recommendation to Provost Kennedy to Provost Kennedy that recognized his dozen of inappropriate communications with his subordinate, Ms. Burk, profusely apologizing and saying that these were "moments of weakness and stress."

That alone was enough to establish sufficient basis to entitle Defendants to the protection of qualified immunity. *See, e.g.*, *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (noting that officers may rely on other officers, informants and identified bystanders to establish probable cause). Plaintiff may well believe that UConn's investigations reached the wrong result, but — even if that turns out to be the case — Defendants are still protected by qualified immunity. *See id.*; *see also Loria v. Gorman*, 306 F.3d 1271, 1288–89 (2d Cir. 2002) (officer remains entitled to qualified immunity, even if the complainant's statement on which he relies turns out to be false). "It is not the role of the Court to review or second guess the fairness or merit of Defendant's personnel and business decisions. . . ." *Ofoedu v. St. Francis Hosp. & Med. Ctr.,* No. 3:04 CV 1707 PCD, 2006 WL 2642415, at *18 (D. Conn. Sept. 13, 2006), adhered to on reconsideration, No. 3:04CV1707 (PCD), 2006 WL 8446750 (D. Conn. Nov. 6, 2006), aff'd, 282 F. App'x 930 (2d Cir. 2008) (citing *Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 247 (10th Cir.1993) ("Title VII is not violated by the exercise of erroneous or even illogical business judgment.")). The Plaintiff's conclusory allegations are insufficient to state a claim that pretext existed.

It is clear that these allegations do not encompass a situation where Defendants violated "clearly established law" for which "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2083 (2011); *see also Messerschmidt v. Millender*, __ U.S. __, 132

S.Ct. 1235, 1244 (2012) (The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers," but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, –––– U.S. ––––, 137 S.Ct. 548( 2017) (per curiam) (internal quotation marks omitted). The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established'. *Crawford v. Cuomo*, 721 Fed. Appx. 57, 58–59 (2d Cir. 2018). The lack of any allegations that support a conclusion that Defendants' particular conduct violated any clearly established right of Plaintiff's establishes that Defendants are protected by qualified (if not absolute) immunity. Notably, Courts in this district have granted qualified immunity to defendants for claims alleging a retaliatory investigation, concluding that any possible right violated by an investigation, standing alone, is not a clearly established right. *Abdulaziz v. Brembly*, 2018 WL 3764260, at *5 (D.Conn. August 8, 2018) (Chatigny, J.); *Everitt v. DeMarco*, 704 F. Supp. 2d 122, 137 (D. Conn. 2010) (Bryant, J.).

It is clear that each and every one of the individual Defendants is entitled to the protection afforded under the doctrine of qualified immunity because an objective view of the facts reveals that no reasonable person could believe any of them even exceeded the bounds of their authority, let alone that they knowingly violated clearly established law. It would not have been clear to a reasonable officer in these Defendants' position that their conduct was unlawful since Plaintiff had and has no constitutional right to be free from scrutiny for potential wrongdoing for fiscal irregularities, sexual harassment and/or unethical conduct. Quite simply, Plaintiff's Section 1983 claims against these individuals are "insubstantial" and should be dismissed. *See Anderson v. Creighton*, 483 U.S. 635, 640, n.2, (1987).

VI.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully move that the Court dismiss this matter

in its entirety.

>DEFENDANTS,
>UNIVERSITY OF CONNECTICUT,
>SUSAN HERBST (OFFICIAL AND
>INDIVIDUAL CAPACITY), CRAIG
>KENNEDY (OFFICIAL AND
>INDIVIDUAL CAPACITY), JOHN
>ELLIOT (OFFICIAL AND INDIVIDUAL
>CAPACITIES), BRUCE GELSTON
>(OFFICIAL AND INDIVIDUAL
>CAPACITIES), AND STEPHANIE REITZ
>(OFFICIAL AND INDIVIDUAL
>CAPACITIES)
>
>
>WILLIAM TONG,
>ATTORNEY GENERAL

BY:   */s/ Nancy A. Brouillet*
>Nancy A. Brouillet
>Assistant Attorney General
>165 Capitol Ave., Suite 5000
>Hartford, CT 06106
>Tel.: (860) 808-5340
>Fax:  (860) 808-5383
>Email:  Nancy.Brouillet@ct.gov
>Federal Bar # ct03138

38

## **CERTIFICATION**

I hereby certify that on February 7, 2020, a copy of the foregoing was filed electronically.

Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing

system.

> */s/ Nancy A. Brouillet*
> Nancy A. Brouillet (#ct03138)
> Assistant Attorney General