**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RAM D. GOPAL,<br>    *Plaintiff,*<br><br>    v.<br><br>UNIVERSITY OF CONNECTICUT,<br>SUSAN HERBST, CRAIG KENNEDY,<br>JOHN ELLIOT, BRUCE GELSTON, AND<br>STEPHANIE REITZ,<br>    *Defendants.* | No. 3:19-cv-01810 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Ram Gopal ("Plaintiff") has sued the University of Connecticut, Susan Herbst, Craig

Kennedy, John Elliot, Bruce Gelston, and Stephanie Reitz (collectively, "Defendants") for their

alleged involvement in his termination under Title VII of the Civil Rights Act of 1964, the

Fourteenth Amendment of the U.S. Constitution's Due Process Clause, and the Fourteenth

Amendment's Equal Protection Clause.

Defendants have moved to dismiss Mr. Gopal's Complaint.

For the reasons stated below, Defendants' motion to dismiss is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On September 1, 1993, Rom Gopal, an Asian-American male, began working at the

University of Connecticut ("UCONN"). Compl. ¶¶ 4, 14, ECF No. 1 (Nov. 15, 2019). Mr. Gopal

worked for UCONN until the termination of his employment on August 19, 2018. Compl. ¶ 14.

At the time of his termination, Mr. Gopal held the position of Operations Information

Management GE Endowed Professor and Department Head at the University of Connecticut

1

School of Business ("OPIM"). *Id.* at ¶ 4.

Mr. Gopal alleges that, for the entirety of his employment at UCONN, he was a "conscientious, hard-working and successful employee," and that he "received exemplary performance evaluations" throughout his tenure. *Id.* at ¶¶ 15–16.

On or about December 15, 2017, however, Susan Herbst, President of UCONN, Craig Kennedy, Provost of UCONN, and John Elliot, Dean of the UCONN School of Business, started an investigation against of Mr. Gopal in response to an anonymous complaint about departmental travel policy violations. *Id.* at ¶¶ 6–8, 17–18. The anonymous complaint allegedly did not identify Mr. Gopal as the person in violation of said policies, but instead stated that the violations were being made by "a department head at OPIM," a position also held by white professors. *Id.* at ¶ 26. Bruce Gelston, an associate compliance officer in the University's Office of Compliance, conducted the investigation, allegedly at the instruction of President Herbst, Provost Kennedy and Dean Elliot. *Id.* at ¶¶ 9, 23–25.

On or about May 22, 2018, Mr. Gelston submitted a Final Report to President Herbst, Provost Kennedy, and Dean Elliot. *Id.* at ¶ 30. The Final Report concluded that Mr. Gopal violated UCONN's travel policy. *Id.* On July 26, 2018 Dean Elliot notified Mr. Gopal of his recommendation that Mr. Gopal be terminated, based on the findings in Mr. Gelston's Report. *Id.* at ¶ 41.

On August 29, 2018, Mr. Gopal met with the Defendants and they allegedly told him, he would be fired, if he did not resign. *Id.* at ¶ 42. Mr. Gopal allegedly became eligible for a full pension on September 1, 2018, but allegedly had to resign two days before that date. *Id.* at ¶¶ 44, 46–48.

Mr. Gopal alleges that he later learned that his resignation had been characterized

publicly as "not in good standing." *Id.* at ¶ 48. Mr. Gopal also alleges that all of the findings of

the University regarding him were allegedly made public in the *Hartford Courant* on September

11, 2018, *Fox61 News* on September 11, 2018, and the *Journal Inquirer* on September 20, 2018.

*Id.* at ¶ 59.

Mr. Gopal alleges that the investigation conducted by the Defendants was "racially

motivated, overbroad, malicious, and intrusive." *Id.* at ¶ 25. He further alleges that the

investigation was completed with the "purpose[ful] exclu[sion] of evidence and witnesses." *Id.* at

¶ 28. Mr. Gopal alleges that travel and overtime procedures enforced against him were ignored

by non-minority employees, *id.* at ¶ 34 and "non-minority employees" with similar procedure

violations "were not investigated or disciplined." *Id.* at ¶ 36. In his Complaint, Mr. Gopal

accuses all defendants of being aware that the UCONN School of Business had "inept

procedures that we not uniformly enforced." *Id.* at ¶ 35. Mr. Gopal argues that he "was treated

differently than other employees based upon his race. . . color, national origin, and ancestry." *Id.*

at ¶ 51.

### B. Procedural History

On October 2, 2019, Mr. Gopal received a Release of Jurisdiction letter from UCONN

from the Connecticut Commission on Human Rights and Opportunities. *Id.* at ¶ 81.

On November 4, 2019, he received a Right to Sue letter from the United States Equal

Employment Opportunity Commission. *Id.* at ¶ 82.

On November 5, 2019, Mr. Gopal filed his Complaint. ECF No. 1.

On February 5, 2020 Mr. Gopal and Defendants filed a report on their Rule 26(f)

Planning Meeting. ECF No.17 (Feb. 5, 2020).

Two days later, on February 7, 2020, Defendants filed a motion to dismiss under Federal

Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). Mot. to Dismiss, ECF No. 19 (Feb. 7, 2020), redacted to ECF 41 (May 6, 2020) ("Def. MTD").

On March 20, 2020, Mr. Gopal filed an opposition memorandum in response to Defendants' motion to dismiss. Mem. In Opp'n, ECF No. 33 (Mar. 20, 2020) ("Pl.'s Mem. In Opp'n.").

On May 11, 2020, Defendants filed their reply to Mr. Gopal's opposition memorandum. Reply to Resp. to Mot. to Dismiss, ECF No. 44 (May 11, 2020) ("Def. Reply").

On May 15, 2020, Defendants filed a "Notice of Supplemental Authority" to support their motion to dismiss. Notice of Suppl. Authority, ECF No. 49 (May 15, 2020).

On May 20, 2020, Defendants filed a "Notice of Supplemental Authority" to support their motion to dismiss. Notice of Suppl. Authority, ECF No. 51 (May 20, 2020).

On June 12, 2020, Defendants filed a "Notice of Supplemental Authority" to support their motion to dismiss. Notice of Suppl. Authority, ECF No. 52 (Jun. 12, 2020).

On July 7, 2020, Defendants filed a "Notice of Additional Authority" to support their motion to dismiss. Notice of Additional Authority, ECF No. 53 (Jul. 7, 2020).

On August 11, 2020, Defendants filed a "Notice of Controlling Authority" to support their motion to dismiss. Notice of Controlling Authority, ECF No. 60 (Aug. 11, 2020).

On August 14, 2020, Defendants filed a "Notice of Controlling Authority" to support their motion to dismiss. Notice of Controlling Authority, ECF No. 63 (Aug. 14, 2020).

On August 17, 2020, Defendants filed a "Notice of Controlling Authority" to support their motion to dismiss. Notice of Controlling Authority, ECF No. 65 (Aug. 17, 2020).

On September 9, 2020, Defendants filed a "Notice of Controlling Authority" to support

of their motion to dismiss. Notice of Controlling Authority, ECF No. 69 (Sept. 9, 2020).[1]

On September 15, 2020, the Court held oral argument on the Defendant's motion to dismiss. Min. Entry, ECF No. 70 (Sept. 15, 2020).

## II.   STANDARD OF REVIEW

In evaluating a motion under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the court "must accept as true all material factual allegations in the complaint[,]" but need not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff bears the burden of showing that subject matter jurisdiction is proper based on facts existing at the time he or she filed the complaint. *Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 40 (2d Cir. 1996) (internal citations omitted).[2]

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] Although Defendants have filed several supplemental authorities and have described some of them as "controlling," to the extent they involve summary orders, they are not. While instructive, summary orders are not binding precedent. *See Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011) ("Under this Court's Rules, and as stated in the heading of our summary orders deciding appeals, 'RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.'") (referencing 2d Cir.  R. 32.1.1(a)) (emphasis in original).

[2] Under Federal Rule of Civil Procedure 12(b)(5), a party may file a motion to dismiss due to "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Although referred to in Defendants' motion to dismiss, the Defendants have failed to provide an argument as to why Rule 12(b)(5) is applicable here. As a result, the Court will not address this argument.

555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); see also *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

The Defendants have moved to dismiss all three of Mr. Gopal's claims, the Title VII claim, the Due Process Claim, and the Equal Protection Clause claim, under several theories.

The Court will address each of these claims in turn.[3]

### A.  The Title VII Claim

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established a burden-shifting framework to evaluate claims of employment discrimination and outlined the elements of a prima facie case. Consistent with this decision, in the Second Circuit, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) there is "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff's burden for establishing a prima facie case is *de minimis. Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) ("We have characterized plaintiff's prima facie burden as 'minimal' and '*de minimis.*'") (citing *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).

In the initial pleading stage of litigation for a Title VII employment discrimination claim, "allegation of facts supporting a minimal plausible inference of discriminatory intent suffices...because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff." *Doe*

---

[3] If information and exhibits outside the scope of Mr. Gopal's Complaint are considered, this Court must treat this motion as a motion for summary judgment. *See Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("Rule 12(d) of the Federal Rules of Civil Procedure provides, 'If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'"); *see also Mayo v. Fed. Gov't*, 558 F. App'x 55, 56 (2d Cir. 2014) ("[A] court may convert a motion to dismiss into a motion for summary judgment by considering extrinsic evidence..."). Defendants, however, have requested that their filings be reviewed consistent with the motion to dismiss standard. As a result, the Court will proceed accordingly.

*v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016); *see also Dawson v. N.Y. City Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember th[e] exceedingly low burden that discrimination plaintiffs face...."). The allegations need not, however, give "plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311.

Defendants seek to dismiss Mr. Gopal's Title VII claim for several reasons. First, they argue that any such claims against the individual defendants should be dismissed because a Title VII claim may only be brought against his employer, UCONN. Def. MTD at 10. Second, they argue that the Title VII disparate treatment claims against UCONN fail because Mr. Gopal fails to plead even a minimal claim of racial discrimination. *See id.* at 14. In their view, by not providing specific examples of similarly situated employees being treated differently, Mr. Gopal has failed to show the minimal evidence required to move forward with his Title VII claim. *Id.* Defendants also argue that Mr. Gopal has no viable Title VII claim based on a hostile work environment. *Id.* at 14-16. Finally, Defendants argue that any Title VII claim suggesting a "a pattern and practice" of discrimination must be dismissed because this theory cannot be used in a private, non-class suit. *Id.* at 17.

Mr. Gopal argues that he has sufficiently pled the necessary elements of a Title VII employment discrimination claim. In his view, he adequately has pled being (1) Asian-American, a member of a protected class; (2) qualified for the position he held; (3) subjected to an adverse employment action; and (4) having had an adverse action occur under circumstances giving rise to an inference of discrimination. Compl. ¶ 70. Mr. Gopal also argues having properly alleged that, while he was not the only non-white dean in OPIM, his white colleagues were not

subjected to investigations after the UCONN received the anonymous letter alleging travel violations. *Id.* at ¶ 36.

As to the Defendants' argument that a Title VII claim can only be brought against UCONN, Mr. Gopal does not disagree and denies having brought a Title VII claim against any of the individual defendants. As Mr. Gopal points out, "There is not Title VII claim in the complaint against any individual defendant. The Complaint is clear: "UCONN [sic] actions and termination of plaintiff violated Title VII." Pl.'s Mem. In Opp. at 11 (citing Compl. ¶ 80).

As to the Defendants' argument about Mr. Gopal's alleged Title VII pattern and practice claim, again, Mr. Gopal denies having brought a separate and distinct pattern and practice claim, and instead makes an allegation of a broader practice of discrimination only as a means of supporting his disparate treatment claim. *See* Pl.'s Mem. In Opp. at 20-21 ("The plaintiff is not seeking to prove his claims via a *Teamsters's* method of proof. But the facts concerning defendants' practices are highly relevant.").

Finally, as to Defendants' arguments about the insufficiency of his hostile environment claim, Mr. Gopal argues that his Complaint's allegations are sufficient.

The Court agrees.

First, the factual allegations in Mr. Gopal's Complaint are sufficient to state a claim for disparate treatment at this stage of the case. As the Second Circuit has noted, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Mr. Gopal's Complaint satisfies this standard. *See* Compl. ¶ 4 (Plaintiff is an "Asian-American male"); *Id.* at ¶ 16 (alleging "Plaintiff received

exemplary performance evaluations during his entire tenure); *Id.* at ¶ 56 (alleging "Plaintiff was subject to harassment, and false administrative charges by defendants, who . . . maintained them to harm plaintiff's employment and career"); *Id.* at ¶ 36 (alleging "non-minority employees had similar . . . violations and were not investigated or disciplined."). At this stage of the case, he is not required to "give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311.

Defendants' second and third arguments for dismissing Mr. Gopal's Title VII claim, that the claim is brought against individual defendants, and is a pattern and practice claim, also fail. As Mr. Gopal has rightly noted, the Title VII claim is only against UCONN. *See* Compl. ¶ 80 ("UCONN [sic] actions and termination of plaintiff violated Title VII"). Defendants rightly note that a pattern and practice theory cannot be used in a private, non-class suit. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 (2d Cir. 2012) ("Permitting private plaintiffs to sue the pattern-or-practice method of proof outside the class action context would require us to extend this method beyond its current application. This we decline to do."). But, as Mr. Gopal also rightly points out, although "the pattern-or-practice method of proof," (a "unique form of liability available in government actions," *see id.* at 147) is not available to prove his claim, "proof that employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case." *Id.* at 149. As the Second Circuit in *Chin* made clear, a Title VII private plaintiff's proposed use of this alleged evidence "cannot relieve the plaintiff of the need to establish each element of his or her claim," *id.*, a critical distinction between Mr. Gopal's ordinary Title VII disparate treatment claim and the authority extended under Title VII to claims brought by the United States government.

Finally, Defendants' final argument for dismissing Mr. Gopal's Title VII claim, the failure to plead a viable hostile work environment claim, suffers from the same flaw as their argument to dismiss the Title VII disparate treatment claim: the imposition of an evidentiary standard more appropriate for the summary judgment stage than now.

To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts alleging that the complained of conduct: (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive;" (2) "creates an environment that the plaintiff subjectively perceives as hostile or abusive;" and (3) "creates such an environment because of the plaintiff's [status in a protected class]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted) (citing *Gregory v. Daly,* 243 F.3d 687, 691–92 (2d Cir. 2001)).

Mr. Gopal has alleged an "objectively severe or pervasive . . . environment that a reasonable person would find hostile or abusive." He alleges that, "without any legitimate basis or allegation," UCONN officials subjected him to "a racially motivated, overbroad, malicious and intrusive investigation." Compl. ¶¶ 23, 25; *see also* Pl.'s Mem. In Opp. at 18.  In his view, "Defendants' hostile conduct occurred over a period of months culminating in a manipulative, oppressive and deceptive ouster." Pl.'s Mem. In Opp. at 18.  And "created an []abusive workplace based upon Plaintiff's race." *Id.*

Ultimately, these allegations may not be supported by admissible evidence, but, at this time, they are sufficient to deny Defendants' motion to dismiss. *See Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (vacating and remanding decision granting motion to dismiss because "the district court erred when it failed to consider all allegations in the Complaint in their totality, including those that were not sexually offensive in nature."). "To

decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* (internal quotation marks omitted). Because this Court must and has "considered all incidents in their totality," *id.*, the Court determines that Mr. Gopal adequately stated a hostile work environment claim.

Accordingly, Defendants' motion to dismiss Mr. Gopal's Title VII claim will be denied.

### B.  The Fourteenth Amendment Due Process Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Claims brought under this provision are reviewed as follows: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so, we ask whether the procedures followed by the State were constitutionally sufficient." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016), as amended (Feb. 24, 2016) (citing *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011)).

Mr. Gopal alleges that the Defendants denied him, a union member, of protections under a Collective Bargaining Agreement ("CBA"). Specifically, he cites CBA Articles 27A, 27B, and 32, which call for dismissal only for cause, a hearing before dismissal, and notice and an opportunity to be heard before dismissal, respectively. Compl. ¶¶ 88–93.  He argues that he had a property interest in his continued employment, and, by denying him the procedures of the Collective Bargaining agreement, his termination was a violation of his right to due process. Compl. ¶ 87. Mr. Gopal also alleges a due process claim for a protected liberty interest. *See, e g.,* Pl.'s Mem. In Opp at 25 (arguing that "[He] pleaded in his complaint the prerequisites for a due

process claim: (1) possession . . . of a protected liberty or property interest, and (2) deprivation of that interest . . . .").

Generally, with respect to the due process claims as well as the equal protection claim, Defendants first seek to dismiss under immunity grounds. They argue that the Eleventh Amendment bars claims for monetary damages against them in their official capacities. And they are immune from suit because 42 U.S. Code § 1983 claims can only be brought against "persons," and under the Eleventh Amendment the State, its agencies, and its officials are not considered "persons." Def. MTD at 10 –11. Defendants also move for the dismissal of these claims against UCONN because any injunctive and declaratory relief claims are barred as the State of Connecticut has not consented to being sued.

More specifically, as to the due process claims, Defendants argue that Mr. Gopal failed to exhaust his administrative remedies and thus, this Court lacks subject matter jurisdiction over this claim. In their view, Mr. Gopal should have availed himself of the procedures under "the collective grievance process as a union member, and the procedures for review and relief by the University's policies, including an investigation for discriminatory treatment." Def. MTD at 20. As a result, they argue, "Since Plaintiff chose to resign rather than to exercise his rights to this process, he has failed to state a claim for a constitutional violation." *Id.* at 22.

Defendants also argue that Mr. Gopal's "stigma plus" due process claim is insufficiently pled. In their view, "the complaint is devoid of any specific statement made about him, much less ones capable of supporting a stigma-plus claim." *Id.* at 23 (citing Compl. ¶¶ 95–98). And "Plaintiff's resignation does not satisfy the 'plus' requirement because he was never suspended nor terminated – *he suffered no financial loss as a result of the Defendants' action but chose to resign rather than face the public consequences of his actions.*" *Id.* (emphasis in original).

Finally, with respect to these claims as well as the equal protection claim, Defendants argue that qualified immunity precludes liability, even if all of these alleged deficiencies did not. They assert that there was no "clearly established law that doing internal investigations of allegations of wrongdoing which violated state statute and [UCONN] Policies, could be a violation of Plaintiff's rights or that the Plaintiff's refusal to utilize the process available to him through the collective bargaining agreement was a violation of his constitutional rights." *Id.* at 32. More specifically, as to the application of qualified immunity to Mr. Gopal's due process claim for a protected property interest, in Defendants' view, there is no clearly established law that UCONN had to provide any additional procedures to Mr. Gopal, after he failed to avail himself of the procedures in the collective bargaining process. *See id.* at 33-34. (citing *Tooly v. Schwaller*, 919 F.3d 165, 175 (2d Cir. 2019)).

As to the Defendants' argument about monetary damage claims against any of the Defendants in their official capacities, Mr. Gopal does not contest it. Mr. Gopal claims not to be seeking monetary damages against the Defendants in their official capacities, only injunctive relief. *See* Pl.'s Mem. In Opp. at 14 ("[P]laintiff's claims against the individual defendants, for money damages, is made against them in their 'individual capacities.'"). From the individual defendants in their official capacities, Mr. Gopal "seeks the prospective relief of reinstatement with all back pay and benefits and an order prohibiting defendants from 'continuing their illegitimate discriminatory and retaliatory practices.'" *Id.* Mr. Gopal argues that his claim for injunctive relief against these named 'state officers' in their official capacities is well pled. *Id.*

As to the Defendants' argument that no injunctive or declaratory relief would be appropriate as to UCONN, once again, Mr. Gopal argues that he is not seeking such relief. *See id.* at 12 ("[I]t is clear that the plaintiff's claims pursuant to Title VII against plaintiff's employer

14

UCONN, and Fourteenth Amendment claims against the named state officials are not barred by sovereign immunity.").

With respect to the failure to exhaust argument, Mr. Gopal does not respond, but states that his procedural due process claim has been well pled.[4] *See id.* at 25 ("Plaintiff has pleaded in his complaint the perquisites for a due process claim: (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process.") (citing *Tooly*, 919 F.3d at 173).

As to the stigma-plus claim, Mr. Gopal argues that this claim is also well pled. According to Mr. Gopal, "false stigmatizing statements" about him were made "to the public" and "in close proximity to [his] dismissal from his government employment." *Id.* at 25.  And these factual allegations are sufficient to state a viable claim for relief. *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).

As to the qualified immunity argument, Mr. Gopal argues that "qualified immunity only shields government officials from claims based on statutory and constitutional violations," Pl.'s Mem. In Opp. at 26, and "Plaintiff's other claims are not subject to qualified immunity . . . .," *id.* Mr. Gopal never explains which of his claims may or may not survive the doctrine of qualified immunity, although he affirmatively does state "that defendants are not entitled to qualified immunity." *Id.*

---

[4] Given the underlying factual issues involved with this specific exhaustion argument, this issue is better addressed at the summary judgment stage, if at all. *Cf. Porter v. Nussle*, 534 U.S. 516, 523 (2002) ("Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court."); *see also Weyant v. Phia Grp. LLC*, No. 19-3117, 2020 WL 5048525, at *1 (2d Cir. Aug. 27, 2020) (reversing summary judgment decision and finding that "the district court erred in determining that exhaustion was required here because there was no evidence that an administrative appeals process existed for [Plaintiff] to exhaust.").

The Court agrees for now, but, at the very least, the procedural due process claim for a protected property interest ultimately may be dismissed at the summary judgment stage of this case.

As a preliminary matter, Defendants' Eleventh Amendment and sovereign immunity arguments fail for the reasons stated by Mr. Gopal. Defendants have simply misconstrued his claims.

As to Mr. Gopal's procedural due process claim, qualified immunity likely applies to it. Mr. Gopal's procedural due process argument is premised on the Defendants' failure to provide him protections provided under the Collective Bargaining Agreement. Compl. ¶ 53; Pl.'s Mem. In Opp. at 5. But the scope of Mr. Gopal's constitutional rights is not determined by the terms of his collective bargaining agreement, or any state-mandated process of law for that matter. *See Tooly*, 919 F.3d at 172 ("In determining how much process is adequate, we look to '[f]ederal constitutional standards rather than state statutes [to] define the requirements of procedural due process.'") (quoting *Robinson v. Via*, 821 F.2d 913, 923 (2d Cir. 1987)).

And even assuming the Defendants deprived Mr. Gopal of a protected property interest requiring due process, Mr. Gopal cannot prevail unless, under the specific facts of this case, there was clearly established law that this denial violated the Due Process Clause. *See id.* at 174 ("[T]he question presented is whether there is clearly established federal law holding that the Due Process Clause is violated when the employer has provided the plaintiff with an opportunity to receive the process required . . . but the plaintiff, for possibly proper reasons, has not made use of that process by appearing or responding.").

In *Tooly*, the Second Circuit held that: "No case, in this Circuit, or elsewhere, that has been cited to us had held that, where the defendant provides an opportunity for the plaintiff to

receive due process at a meeting and the plaintiff, even for potentially valid reasons, fails to appear, the defendant must provide alternative procedures." *Id.* at 175. The Second Circuit further noted that: "Nor has any case established that the procedures required by [*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)] may not be provided at that same hearing or that they must be provided in a particular manner not satisfied here." *Id.*

As a result, Mr. Gopal's procedural due process claim for a protected property interest is unlikely to survive the application of qualified immunity. Nevertheless, because the *Tooly* decision came at the summary judgment stage, rather than at the motion to dismiss stage, and a full record regarding the circumstances surrounding Mr. Gopal's termination – with admissible evidence rather than only factual allegations – are not before the Court now, the Court will reserve judgment on the dismissal of this claim until the summary judgment stage, particularly since Mr. Gopal's Title VII claims will have to be further addressed at that stage of the case as well.  *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

As for the stigma-plus claim, a procedural due process claim "alleging deprivation of a protected liberty interest," *Waronker v. Hempstead Union Free Sch. Dist.*, 788 Fed. App'x 788, 793 (2d Cir. 2019), *cert. denied*, 206 L. Ed. 2d 823 (Apr. 20, 2020) (summary order), this claim too survives the Defendant's motion to dismiss. As both parties recognize,

> [t]o prevail on such a claim, a plaintiff must plausibly allege "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."

*Id.* at 794 (quoting *Sadallah*, 383 F.3d 34 at 38).

17

Mr. Gopal alleges that false statements about him included in the investigation conducted by Mr. Gelston, the compliance officer, relied upon by President Herbst, Provost Murray, and Dean Elliott to get him terminated, *see* Compl. ¶ 30 (alleging that "[o]n or about May 22, 2018, Gelston submitted to Herbst, Kennedy, and Elliot his 'Final Report,' which falsely and maliciously stated that plaintiff violated UCONN's travel policy"). He further alleges that those false statements reiterated in public comments about the ending of Mr. Gopal's employment with UCONN were false and injurious, and helped cause his termination as well as his current difficulties in obtaining future employment. *See* Compl. ¶ 59 (quoting from statements allegedly made to the news media, and comments allegedly made by Reitz). At this stage of the case, these factual allegations are sufficient.[5]

Accordingly, for now, the Court will deem as sufficient Mr. Gopal's factual allegations with respect to both of his procedural due process claims, the one for an alleged deprivation of a protected property interest, and the other for the alleged deprivation of a protected liberty interest, and deny Defendants' motion to dismiss these two claims.

### C. The Fourteenth Amendment Equal Protection Claim

A public employee may allege discrimination in violation of the Fourteenth Amendment and "bring suit pursuant to § 1983." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). "Such § 1983 discrimination claims parallel Title VII discrimination claims in many respects." *Id.* "The basic elements of such claims, whether pursued under Title VII or § 1983, are similar . . . ." *Id.* And to prove a disparate treatment claim, there must be plausible allegations

---

[5] Significantly, while Defendants cite to the Second Circuit's summary opinion in *Waronker* as a basis for dismissal here. That case involved something far less than the termination of one's employment. *See Waronker*, 788 F.App'x at 794 ("Waronker's placement on administrative leave does not satisfy the 'plus' requirement because, as noted above, nothing in the complaint suggests that he suffered a financial loss as a result of his suspensions."). Here, while Defendants argue that Mr. Gopal has not suffered financially, Mr. Gopal has adequately alleged that "[t]he negative media coverage resulted in plaintiff's inability to readily obtain comparable employment in his field." Pl.'s Mem. In Opp. at 7 (citing to Compl. ¶ 61).

that any "adverse employment action" occurred on account of one's race.  *See id.* (using the words related to sex discrimination rather than race discrimination).

But for a § 1983 claim, first, there must be allegations that "the alleged deprivation was committed by a person acting under color of state law." *Id.* Second, rather than just "against the employing entity, a § 1983 claim 'can be brought against an[y] individual' responsible for the discrimination." *Id.*  Third, the defendant must have "*personally* violated a plaintiff's constitutional rights . . ." *Id.* (emphasis in original). Fourth, and finally, "a plaintiff pursuing a claim for employment discrimination under § 1983 rather than Title VII must establish that the defendant's discriminatory intent was a 'but-for' cause of the adverse employment action or the hostile environment." *Id.* at 214.

In addition to arguments raised with respect to Mr. Gopal's Title VII claim, Defendants also argue that to the extent that Mr. Gopal's equal protection claim is based on selective enforcement, it fails, and that there is a higher level of evidentiary proof for this claim.  As a result, in their view, the factual allegations are insufficient.

Mr. Gopal argues that he has adequately alleged his equal protection claim. Pl.'s Mem. In Opp. at 9 (citing to the Complaint at ¶¶ 107-109).

The Court agrees.

Once again, Defendants rely upon for precedential support a case at the summary judgment stage, not the motion to dismiss stage. Significantly, in that case clarifying how to determine the viability of a § 1983 equal protection claim for employment discrimination – in the related context of a sex discrimination claim – the Second Circuit held that: "a court considering a § 1983 claim at summary judgment must determine whether, construing the evidence in a light

most favorable to the plaintiff, a reasonable jury could find that the adverse employment action would not have occurred but-for sex discrimination." *Naumovski*, 934 F.3d at 214.

As a result, when this case reaches that stage, the Court will review the viability of Mr. Gopal's claims based on the availability of admissible evidence rather than the factual allegations of his Complaint or any documentary evidence better presented at that stage of this case.[6]

Accordingly, the Defendants' motion to dismiss Mr. Gopal's equal protection claim will be denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of September, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[6] Although not addressed directly in this ruling elsewhere, the Court also rejects Defendants' arguments regarding the absence of personal involvement by any or all of the Defendants in the alleged constitutional violations. Defendants rightly cite relevant precedent, such as the Second Circuit's decades old (and still good law) holding that there must be factual allegations of "personal involvement of [the defendants] sufficient their liability for wrongful acts," not merely their "linkage in the . . . chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see* Def. MTD at 34 (citing to and quoting from this case). But nowhere in their written submissions do Defendants deny or otherwise disclaim having been involved in some way in the termination of Mr. Gopal or the subsequent dissemination to the public through the news media of the circumstances surrounding his departure or both. Indeed, as alleged in the Complaint, each of the individual Defendants had some role in these events. *See e.g.*, Compl. ¶ 23 ("Herbst, Kennedy and Elliot, without any legitimate basis or allegation ordered OUC to investigate plaintiff."); *Id.* at ¶ 25 ("Gelston, at the behest of Herbst, Kennedy and Elliot, conducted a racially motivated, overbroad, malicious and intrusive investigation of plaintiff."); *Id.* at ¶ 59 ("Defendants Herbst, Kennedy, Elliot and Reitz published . . . false and defamatory statements."). As a result, to the extent there is an argument for a lack of personal involvement in the alleged violations of Mr. Gopal's rights, that determination also is better made with admissible evidence rather than on factual allegations or the argument of counsel.